HARBOR CREDIT UNION, Plaintiff-Respondent,

v.

Christopher D. SAMP, Defendant-Appellant.†

Court of Appeals

*No. 2010AP974. Submitted on briefs November 8, 2010.*
*—Decided February 17, 2011.*

2011 WI App 40

(Also reported in 796 N.W.2d 813.)

† Petition for Review filed.

214

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Randall J. Nesbitt* of *Pinkert Law Firm LLP*, Sturgeon Bay.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John R. Petitjean* of *Hinkfuss, Sickel, Petitjean & Wieting*, Green Bay.

Before Vergeront, P.J., Lundsten and Blanchard, JJ.

¶ 1. BLANCHARD, J. Harbor Credit Union obtained a judgment of foreclosure on real estate owned by Christopher Samp based on Samp's default on a first mortgage and note. Harbor was the successful bidder at a sheriff's sale based on the judgment of foreclosure. The sale was confirmed by the circuit court. Samp filed a motion to reconsider and vacate the confirmation order, which was denied by the court. Samp appeals this order and the order confirming sheriff's sale.

¶ 2. The issues Samp now raises on appeal arise largely from the fact that Harbor, in a separate action from this one, obtained a money judgment against Samp on a second mortgage and note that Harbor held on the same property. Harbor obtained the money judgment in the separate action shortly before the sheriff's sale of the property in this foreclosure action. At the sheriff's sale, Harbor bid an amount equal to the

combined values of the amount due Harbor on the first mortgage foreclosure judgment and the amount due Harbor on the second mortgage money judgment.

¶ 3. We conclude that: (1) the circuit court correctly determined that in this foreclosure action on the first mortgage Harbor was entitled to the accelerated redemption period under WIS. STAT. § 846.101 (2009–10),[1] because the money judgment on the second mortgage was not a deficiency judgment in this foreclosure action; (2) the circuit court did not erroneously exercise its discretion in denying Samp's motion to vacate the confirmation order, because a reasonable court could have concluded that Samp failed to demonstrate that he was unjustly prevented from redeeming the property under WIS. STAT. § 846.13; and (3) Samp's substantial rights were not affected by Harbor's failure to pay to the clerk of circuit court, within ten days of the sheriff's sale, the difference between Harbor's successful bid and the amount due on the first mortgage foreclosure judgment, pursuant to WIS. STAT. § 846.17. Accordingly, we affirm the circuit court.

## BACKGROUND

### *Foreclosure Judgment on First Mortgage*

¶ 4. Relevant facts are not in dispute. In March 2009, Harbor filed a complaint for foreclosure on the first mortgage and note. Harbor alleged that as a result of his default, Samp owed Harbor $273,639.40, plus interest. Harbor elected in its complaint to shorten the period within which Samp could redeem the property from twelve months to six months. This election re-

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

quired Harbor to waive its right to a personal judgment against Samp for any deficiency that might remain after subtracting the amount realized by Harbor at sale from Harbor's balance due, reflected in the first mortgage foreclosure judgment. Included in Harbor's complaint was an allegation that Harbor held a second mortgage on the same property representing security for a $125,000.00 loan, but the complaint did not make further reference to the second mortgage.

¶ 5. In June 2009, the circuit court granted summary judgment to Harbor and issued an order and judgment finding that Samp had defaulted on the first mortgage note and, as a result, owed Harbor $272,125.73 (with disbursements and fees, a total of $275,055.73). The court ordered that the property could be sold for the amount due Harbor at a sale to be scheduled at least six months after entry of the foreclosure judgment. The court also ordered that no deficiency judgment could be entered against Samp even if the proceeds from the sale were insufficient to pay the amount due on the first mortgage. The order and judgment also included the following paragraph: "The Plaintiff has a second mortgage on the property in the amount of $125,000.00, Document Number 709545, which is junior and subordinate to the mortgage being foreclosed." However, it made no further reference to the second mortgage.

### Foreclosure Money Judgment
### on Default of Second Mortgage

¶ 6. After obtaining the foreclosure judgment on the first mortgage, Harbor filed a separate action on the second mortgage, seeking a money judgment, which was granted by the court in the amount of $120,744.10 on December 23, 2009.

*Sheriff's Sale and Judicial Confirmation*

¶ 7. At the sheriff's sale on January 6, 2010, Harbor submitted the only bid, for $410,997.88. On January 18, 2010, Harbor moved for judicial confirmation of sale, noticing January 27, 2010, for a confirmation hearing, and attaching an affidavit that its motion had been mailed to Samp's then attorney on January 20, 2010.

¶ 8. In its motion for confirmation, Harbor claimed amounts it was due, the total of which equaled its winning bid. This included the following entries: (1) "Amount of Judgment: $275,055.73," and (2) "2nd Mortgage balance: $122,474.32." As relevant to this appeal, Harbor sought orders confirming the sale, applying the sale proceeds to Harbor's "outstanding mortgages," and requiring the clerk of court to deliver the sheriff's deed for the property to Harbor.

¶ 9. On January 27, 2010, the court convened a confirmation hearing. Harbor's attorney appeared by telephone; Samp appeared in person but without counsel. Harbor's attorney asserted that Harbor's successful bid was sufficient to cover the combined total of the amounts due Harbor on both the first and second mortgages. As a result, the attorney asserted, there was no deficiency on the foreclosure of the first mortgage, and the money judgment on the second mortgage "would also be satisfied from the proceeds of the sale. So Mr. Samp would be walking away without any debt to [Harbor] in regard to those two loans."

¶ 10. Samp said that he wanted to "retain the property" by paying "the amount that I owe." The attorney for Harbor responded, "The bid, your Honor, was $410,997.88. If Mr. Samp pays that amount to the clerk, there is nothing I can—I mean, that's what he

pays." Samp expressed confusion about what he needed to pay to hold onto the property: the total amount bid, or instead only the amount due on the first mortgage, approximately $275,000. The attorney for Harbor called the court's attention to the fact that Harbor's motion to confirm the sale had reflected the total amount alleged to be due Harbor at the time of sale as being $410,997.88.

¶ 11. The court found that "all of the statutory requirements for the sale have been complied with, and as we have indicated today, if [Samp] can come up with $410,997.88, absolutely, [Samp is] going to need to deposit those funds with the clerk of court's office." The court said that if Samp did not pay that amount, "this deed is going to be delivered to [Harbor's attorney] and his client is going to have title to the property."

¶ 12. Samp requested "a few days." The court declined to adjourn the hearing, but invited Samp to consider seeking legal advice and to negotiate with Harbor's attorney going forward. The court then made a finding that the sheriff's sale had been conducted "pursuant to the foreclosure judgment in this case," and that the amount Harbor had bid "represents fair and reasonable value for the property."

¶ 13. Samp again inquired as to "who I have to pay basically to make the title whole?" The court repeated that Samp could pay the clerk of court, but now added that court staff preferred that the money be delivered to Harbor's attorney. The court emphasized its position that Samp needed to complete payment on the same day as the hearing in order to hold onto title.

¶ 14. At some point following the hearing, the court signed an order confirming the sale, dated the same day as the hearing, directing the clerk of court to

deliver a sheriff's deed to Harbor.[2] The order included a finding that "the monies arising from said Sale were sufficient to pay the whole amount adjudged due to [Harbor], on its first and second mortgage[s]." The order also included a determination that Harbor was not seeking a deficiency judgment.

*Events Following Confirmation of Sheriff's Sale*

¶ 15. On February 12, 2010, an attorney for Samp filed a motion to vacate the order confirming the sale. The motion was accompanied by affidavits of Samp and Attorney William Woodward. In relevant part, Samp averred that he made "several attempts" "during the day of the confirmation hearing" to contact the attorney for Harbor "to conclude the transaction to redeem the property."

¶ 16. Woodward averred that he tried unsuccessfully to arrange with Harbor representatives, immediately following the confirmation hearing, for a redemption payment on behalf of Samp in the amount of the winning bid, to be paid after the day of the confirmation hearing. Details of Woodward's averments are summarized below as part of our discussion of Samp's failure to redeem the property.

¶ 17. Following a hearing, the circuit court denied Samp's motion to reconsider its confirmation order.

## DISCUSSION

¶ 18. Samp contends that: (1) Harbor was not entitled to the accelerated six-month redemption period

---

[2] The order names Harbor as the purchaser, but also names a party other than Harbor as the plaintiff entitled to the sheriff's deed. However, this appears to be a scrivener's error, and in any case Samp does not refer to this fact in his arguments. Therefore we ignore it.

because the money judgment on the second mortgage amounted to a deficiency judgment in this foreclosure proceeding, and Samp should have been insulated from a deficiency judgment by Harbor's promise not to seek one; (2) Samp was unjustly prevented from redeeming his property under Wis. Stat. § 846.13 on the day of the confirmation hearing; and (3) Harbor failed to satisfy the requirement of Wis. Stat. § 846.17 that, within ten days following confirmation, Harbor deliver to the clerk of circuit court funds representing the difference between Harbor's successful bid and the amount outstanding on the first foreclosed mortgage.

¶ 19. We have summarized the standards of review in this context:

> Generally, mortgage foreclosure proceedings are equitable in nature. However, to the extent resolution of the issues on . . . appeal require the construction of statutes as applied to undisputed facts, they present questions of law, which we review de novo. The decision whether to confirm a sale is committed to the circuit court's discretion. We affirm discretionary decisions if the circuit court applies the correct legal standard to the relevant facts and reaches a reasonable outcome.

*JP Morgan Chase Bank, NA v. Green*, 2008 WI App 78, ¶ 11, 311 Wis. 2d 715, 753 N.W.2d 536 (citations omitted). In addition, a circuit court's equitable authority in this area "extends even after confirmation of sale, if necessary to provide 'that no injustice shall be done to any of the parties,' " although a court "may not exercise its equitable authority if such exercise would ignore a statutory mandate." *GMAC Mortgage Corp. v. Gisvold*, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998) (citations omitted).

225

## Accelerated Redemption Period

¶ 20. Samp contends that Harbor was not entitled to the accelerated redemption period because, between the June 2009 foreclosure judgment on the first mortgage and the January 2010 sheriff's sale on that judgment, Harbor obtained the money judgment against Samp on the second mortgage, which counts as a deficiency judgment in this foreclosure proceeding.

¶ 21. This presents the question of whether the accelerated redemption period is available for a sale made pursuant to foreclosure on a first mortgage when the purchasing lender holding the first mortgage has obtained a money judgment against the mortgagor on a second mortgage on the same property. As we explain below, based on the plain language of Wis. Stat. § 846.101, read together with Wis. Stat. § 846.01(1) and in the context of the comprehensive scheme set forth in ch. 846, we conclude that the money judgment resulting from a separate action on a separate debt did not constitute a deficiency judgment in this foreclosure proceeding on the first mortgage and note.

¶ 22. The goal of statutory interpretation is to " 'faithfully give effect to the laws enacted by the legislature.' We defer to the policy choices of the legislature and we assume that the legislature's intent is expressed in the statutory language it chose." *Warehouse II, LLC v. DOT*, 2006 WI 62, ¶ 14, 291 Wis. 2d 80, 715 N.W.2d 213 (quoting *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110). Therefore, "[s]tatutory interpretation begins with the language of the statute." *State v. Jensen*, 2010 WI 38, ¶ 14, 324 Wis. 2d 586, 782 N.W.2d 415. If the meaning of the statute is plain, we look no further. *Id*. We interpret

statutes reasonably, to avoid absurd results. *Id.* Further, language of one statute should be interpreted in light of related statutory provisions, attempting to give reasonable effect to every word used. *Kalal*, 271 Wis. 2d 633, ¶ 46.

¶ 23. In the mortgage foreclosure context, interpretations of statutes must be based on "the context of ch. 846 as a whole," because ch. 846 "sets up a comprehensive scheme of foreclosure, including the procedural and substantive requirements for obtaining a deficiency judgment for the unpaid balance on the debt remaining after a foreclosure sale." *Bank Mut. v. S.J. Boyer Constr., Inc.*, 2010 WI 74, ¶ 26, 326 Wis. 2d 521, 785 N.W.2d 462 (citing *Kalal*, 271 Wis. 2d 633, ¶ 46).

¶ 24. In order to address the merits of Samp's claim under the redemption-shortening statute, WIS. STAT. § 846.101, it is necessary to consider the meaning of a deficiency judgment under WIS. STAT. § 846.04(1).[3] At the outset of a foreclosure action a plaintiff-mortgagee must decide, and declare in its complaint, whether to preserve its ability to seek a money judgment (called a deficiency judgment) against the defendant-mortgagor for losses that the plaintiff-mortgagee may incur follow-

---

[3] WISCONSIN STAT. § 846.04(1) provides in relevant part:

The plaintiff may, in the complaint, demand judgment for any deficiency that may remain due the plaintiff after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage. Judgment may be rendered for any deficiency remaining after applying the proceeds of sale to the amount due. The judgment for deficiency shall be ordered in the original judgment and separately rendered against the party liable on or after the confirmation of sale. The judgment for deficiency shall be entered in the judgment and lien docket and, except as provided in subs. (2) and (3), enforced as in other cases.

ing a sheriff's sale after taking into account the value of the sale of foreclosed property. § 846.04(1).

¶ 25. The foreclosure plaintiff's right to seek a deficiency judgment is subject to a potential trade-off, at the option of the plaintiff. The plaintiff can pass up the opportunity for a deficiency judgment under Wis. Stat. § 846.101[4] in exchange for the right to a quicker sheriff's sale of the property, shortening the minimum time period between entry of the foreclosure judgment and judicial confirmation of the sale.

¶ 26. In this case, Harbor declared in its foreclosure complaint its intent to waive the right to a deficiency judgment against Samp. Because the property was smaller than twenty acres and involved an owner-occupied, one-to-four family dwelling, the period within

---

[4] WISCONSIN STAT. § 846.101 provides in relevant part:

**Foreclosure without deficiency; 20–acre parcels. (1)** If the mortgagor has agreed in writing at the time of the execution of the mortgage to the provisions of this section, and the foreclosure action involves a one- to 4–family residence that is owner-occupied at the commencement of the action, . . . the plaintiff in a foreclosure action of a mortgage on real estate of 20 acres or less, . . . may elect by express allegation in the complaint to waive judgment for any deficiency which may remain due to the plaintiff after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage, and to consent that the mortgagor, unless he or she abandons the property, may remain in possession of the mortgaged property and be entitled to all rents, issues and profits therefrom to the date of confirmation of the sale by the court.

**(2)** When plaintiff so elects, judgment shall be entered as provided in this chapter, except that no judgment for deficiency may be ordered therein nor separately rendered against any party who is personally liable for the debt secured by the mortgage and the sale of such mortgaged premises shall be made upon the expiration of 6 months from the date when such judgment is entered.

228

which Samp was allowed to redeem was shortened to six months. *See* Wɪs. Sᴛᴀᴛ. § 846.101.

¶ 27. We conclude that there is no reasonable way to read Wɪs. Sᴛᴀᴛ. §§ 846.04(1) and 846.101 to mean that the money judgment obtained on the second mortgage and note should count as a deficiency judgment for purposes of the foreclosure action on the separate indebtedness secured by the first mortgage. The debt that the second mortgage secured was reduced to a judgment; the separate debt that the first mortgage secured resulted in a sheriff's sale but no deficiency judgment.

¶ 28. Samp's attempt to tie the money judgment to this foreclosure proceeding ignores the fact that, under the comprehensive statutory scheme governing foreclosure actions, the right to a deficiency judgment arises from entry of a particular foreclosure judgment referencing that right to deficiency, and the foreclosure judgment in turn results from default on an identified mortgage. By the terms of Wɪs. Sᴛᴀᴛ. § 846.04(1), a deficiency judgment is associated with an identified foreclosure complaint ("the complaint") based on "the debt" secured by "the mortgage." A foreclosure judgment, in turn, is rendered "to pay the amount adjudged to be due upon *the mortgage and obligation secured by the mortgage.*" Wɪs. Sᴛᴀᴛ. § 846.01(1) (emphasis added). In the same way, the terms of Wɪs. Sᴛᴀᴛ. § 846.101, providing for an accelerated redemption period, are concerned only with the election the plaintiff makes in "the complaint" related to "the mortgage."

¶ 29. This is also how deficiency judgments are treated in the case law. Assuming no waiver, a deficiency judgment " 'is merely a completion' " of a judg-

ment of foreclosure on a mortgage and note, and a deficiency judgment is to be issued upon confirmation of sale as a direct consequence of the judgment of foreclosure. *See Bank Mutual*, 326 Wis. 2d 521, ¶ 43 (quoting *Farmers & Merchants Bank v. Matsen*, 219 Wis. 401, 403, 263 N.W. 192 (1935)). "There is in reality but one judgment, the judgment of foreclosure." *Matsen*, 219 Wis. at 403. Put differently, the judgment of foreclosure and sale is a single "first step" of the foreclosure procedure, which includes determining the right of the mortgagee to a deficiency judgment following the sale that is ordered as a result of the foreclosure judgment at issue. *See Shuput v. Lauer*, 109 Wis. 2d 164, 171, 325 N.W.2d 321 (1982).

¶ 30. Samp makes the broad argument that "mortgagees cannot obtain judgments against debtors in any respect once they have waived their deficiency judgment." Samp bases this position on the phrase we emphasize immediately below in Wɪs. Sᴛᴀᴛ. § 846.101(2), which he submits should be read in this case to include the money judgment on the second mortgage:

> [J]udgment shall be entered as provided in this chapter, except that no judgment for deficiency may be ordered therein *nor separately rendered* against any party who is personally liable for the debt secured by the mortgage and the sale of such mortgaged premises shall be made upon the expiration of 6 months from the date when such judgment is entered.

(Emphasis added.) However, this is not a reasonable construction of "nor separately rendered" because it ignores relevant contextual language.

¶ 31. Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 846.101(2) refers to two categories of court orders in using the phrases (1) "may be ordered therein" and (2) "nor separately rendered." The first phrase refers to the court's order, contained in

the judgment of foreclosure and sale, addressing whether a plaintiff may seek a deficiency judgment following a sheriff's sale in that foreclosure action. The second phrase includes the subphrase "for *the debt* secured by the mortgage" (emphasis added), and therefore relates only to orders concerning the debt secured by the mortgage that is a subject of the foreclosure action. In this case, the debt identified in the complaint and foreclosure judgment, and to which Harbor's waiver of deficiency was directed, was the first mortgage and note, not the second mortgage and note.

¶ 32. None of the cases cited by Samp support Samp's broad argument that when a mortgagee has elected a shortened period in a foreclosure action the mortgagee is automatically precluded from seeking any judgment of any kind against the mortgagor in the foreclosure action. The cases also do not support a more limited argument, tailored to the facts of this case, that when the indebtedness at issue arises from a mortgagee's foreclosure on a senior lien, then the mortgagee's election of the shortened period in the foreclosure on that senior lien precludes the mortgagee from seeking a judgment in a separate action on a junior lien on the same property.

¶ 33. Samp cites *Glover v. Marine Bank of Beaver Dam*, 117 Wis. 2d 684, 345 N.W.2d 449 (1984), but that case addressed whether a mortgagee who elects to waive personal deficiency rights under WIS. STAT. § 846.101[5] or WIS. STAT. § 846.103(2) is precluded from foreclosing on other parcels of land secured by *the same mortgage,* or from foreclosing on other mortgages se-

---

[5] The statute in effect at the relevant time was WIS. STAT. § 816.101, subsequently renumbered to WIS. STAT. § 846.101. We will refer to the statute by its current number.

curing *the same debt. Glover*, 117 Wis. 2d at 686. Here there were two mortgages and two debts.

¶ 34. Moreover, the discussion in *Glover* undermines Samp's position. *Glover* explained that a mortgage represents an individual lien on property to secure an identified debt, and the purpose of a foreclosure action is to allow the mortgagee "to apply the mortgaged property to the debt which it secures." *Id.* at 693. Focusing on the single debt at issue in that case, the court concluded that a creditor's waiver of a deficiency judgment "does not imply waiving the right to make further applications of the remaining security toward" that single debt. *Id.* at 697. Thus, the *Glover* court read the consequences of a mortgagee's election to waive personal deficiency narrowly, as a choice tied to a particular, secured debt. Further, *Glover* cautioned against readings of WIS. STAT. § 846.101 that would deprive a creditor of security on which it agreed to extend the loan and provide a windfall to the mortgagor. *Glover*, 117 Wis. 2d at 699.

¶ 35. Samp also cites our opinions in *Bank of Spring Valley v. Wolske*, 144 Wis. 2d 762, 424 N.W.2d 744 (Ct. App. 1988), and *Bank of Sun Prairie v. Marshall Dev. Co.*, 2001 WI App 64, 242 Wis. 2d 355, 626 N.W.2d 319, but neither supports his argument. In *Wolske* we relied on *Glover* to hold that a plaintiff-mortgagee who elected to waive a deficiency judgment in a foreclosure action could nevertheless proceed against remaining personal property of the mortgagor securing the same debt. *Wolske*, 144 Wis. 2d at 766–67. This holding was a straightforward application of *Glover*, and adds nothing to the analysis in Samp's favor. *Bank of Sun Prairie* is also clearly distinguishable, because it involved a single debt secured by two mortgages on two pieces of property,

not two debts secured by a senior and a junior mortgage on the same property at issue here. *Bank of Sun Prairie*, 242 Wis. 2d 355, ¶ 1.

¶ 36. Samp asserts that the operation of the expedited redemption period put him at an unfair disadvantage. However, the legislature enacted the waiver-of-deficiency and redemption statutes to strike a balance that provides "a simplified alternative, allowing the mortgagee the benefit of a shortened period of redemption while protecting the mortgagor by a waiver of deficiency judgment." *Id.*, ¶ 25 (citing *Glover*, 117 Wis. 2d at 694–95, 699). The circuit court in this case was correct in concluding that the rules representing this legislative balance were not violated by use of the six-month redemption period.

## Failure to Redeem

¶ 37. Samp also contends that the circuit court improperly exercised its discretion in failing to vacate its confirmation order because Samp suffered an injustice in being prevented from exercising his right to redeem the property pursuant to WIS. STAT. § 846.13. We disagree, and conclude that the circuit court made a decision that a reasonable court could reach in declining to exercise its discretion to vacate the confirmation order.

¶ 38. A trial court's discretionary decision to grant or deny a motion for relief from judgment under WIS. STAT. § 806.07[6] will be affirmed when it appears

---

[6] Samp did not cite authority for the circuit court to vacate the confirmation order, but we take the court to have enter-

that the trial court " 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.' " *Franke v. Franke*, 2004 WI 8, ¶ 54, 268 Wis. 2d 360, 674 N.W.2d 832 (citation omitted). The record must " 'reflect the circuit court's reasoned application of the appropriate legal standard to the relevant facts of the case.' " *Id.* (citation omitted). However, when a trial court fails to provide an adequate reason for its discretionary decision, this court will uphold the decision if, upon an examination of the record, the facts support the exercise of discretion. *Id.*, ¶ 55.

■■■

¶ 39. Courts are also to bear in mind in this context that "redemption is remedial in nature," and where the right exists it "should be liberally construed in favor of the debtor." *Gisvold*, 215 Wis. 2d at 475.

■■■■

¶ 40. The statutory right of redemption allows a defendant-mortgagor to pay the plaintiff-mortgagee or the clerk of court the amount of the judgment, plus accrued interest, costs, or taxes and thereby hold onto title to the property that secures the debt at issue.

tained the motion under WIS. STAT. § 806.07, which allows a court to order relief from a judgment or order under identified circumstances, which include "[a]ny . . . reasons justifying relief from the operation of the judgment." § 806.07(1)(h). In addition, as Samp does note on appeal and we noted above in the text, our supreme court has observed that a circuit court has equitable authority "even after confirmation of sale, if necessary to provide 'that no injustice shall be done to any of the parties.' " *GMAC Mortgage Corp. v. Gisvold*, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998) (citations omitted).

Wis. Stat. § 846.13.[7] Although the language of § 846.13, at "any time before the sale," on its face would seem to require payment before the sheriff's sale, payment is in fact effective if made before the court confirms the sale. *See Security State Bank v. Sechen*, 2005 WI App 253, ¶¶ 8–9, 288 Wis. 2d 168, 707 N.W.2d 576. In *Sechen* we held that a property owner's statutory right of redemption continues even after the sheriff's sale, until confirmation of sale. *Id.* (relying on the terms of Wis. Stat. §§ 846.13 and 846.17[8] (2003–04) and *Gerhardt v. Ellis*, 134 Wis. 191, 195–96, 114 N.W. 495 (1908) (citing Wis. Stat.

---

[7] The statutory right of redemption provides:

**846.13. Redemption from and satisfaction of judgment.** The mortgagor, . . . may redeem the mortgaged premises at any time before the sale by paying to the clerk of the court in which the judgment was rendered, or to the plaintiff, . . . the amount of such judgment, interest thereon and costs, and any costs subsequent to such judgment, and any taxes paid by the plaintiff subsequent to the judgment upon the mortgaged premises, with interest thereon from the date of payment, at the same rate. On payment to such clerk or on filing the receipt of the plaintiff . . . for such payment in the office of said clerk the clerk shall thereupon discharge such judgment, and a certificate of such discharge, duly recorded in the office of the register of deeds, shall discharge such mortgage of record to the extent of the sum so paid.

[8] Wisconsin Stat. § 846.17 provides, in parts relevant to this discussion:

**Deed, execution and effect of.** Upon [a sheriff's sale] being made the sheriff or referee making the same, on compliance with its terms, shall make and execute to the purchaser, . . . a deed of the premises sold, setting forth each parcel of land sold to the purchaser and the sum paid therefor, *which deed, upon confirmation of such sale, shall vest in the purchaser,* . . . all the right, title and interest of the mortgagor, the mortgagor's heirs, personal representatives and assigns in and to the premises sold *and shall be a bar to all claim, right of equity of redemption therein,* of and against the parties to such action, their heirs and personal representatives, and also against all persons claiming under them

§§ 3165, 3169 (1898))). This interpretation is based on the fact that it is only upon judicial confirmation that title vests in the purchaser, extinguishing the right of statutory redemption. *Sechen*, 288 Wis. 2d 168, ¶ 8.

¶ 41. By the same token, however, while the foreclosure defendant has until judicial confirmation to redeem, the defendant has no more time than that: the right to redeem expires with confirmation. WIS. STAT. § 846.17. Title vests in the purchaser as a result of judicial confirmation, cutting off the defendant's right to redeem.

¶ 42. Samp does not claim that Harbor or the court failed to meet or exceed the procedural requirements of WIS. STAT. § 846.165(1)[9] in noticing or conducting the confirmation hearing. *See Wells Fargo Bank v. Biba*, 2010 WI App 140, ¶¶ 13–16, 19–20, 329 Wis. 2d 787, 793 N.W.2d 95. Instead, Samp asserts that he "came to court prepared to redeem his property based upon the figures which had been previously provided in

---

subsequent to the filing of the notice of the pendency of the action in which such judgment was rendered . . . .

(Emphasis added.)

[9] WISCONSIN STAT. § 846.165 provides:

**Application for confirmation of sale and for deficiency judgment.** (1) No sale on a judgment of mortgage foreclosure shall be confirmed unless 5 days' notice has been given to all parties that have appeared in the action. Such notice shall be given either personally or by registered mail directed to the last-known post-office address, mailed at least 5 days prior to the date when the motion for confirmation is to be heard, if any post-office address is known; if not known, mailing may be dispensed with but an affidavit shall be filed with the court stating that the address is not known, and the notice shall state, in addition to other matter required by law, the amount of the judgment, the amount realized upon the sale, the amount for which personal judgment will be sought against the several parties naming them, and the time and place of hearing.

the Confirmation of Sale application,"[10] and was not permitted to redeem following the confirmation hearing.

¶ 43. For the following reasons, we believe the court's decision not to vacate its confirmation order was a reasonable choice under the applicable statutes.

¶ 44. First, the purpose of the confirmation hearing was not, as Samp's argument implies, to give Samp an opportunity to redeem the property. The purpose was for the circuit court to exercise its broad discretion under Wis. Stat. § 846.165(2)[11] to make a narrow determination: whether property that was in fact subject to a foreclosure judgment sold at auction for "fair value."

---

[10] Although Samp concedes that the contents of the motion for confirmation did not in themselves interfere with his right to redeem, we note that Harbor's motion for confirmation created the potential for confusion by suggesting that the amount due Harbor *in this foreclosure proceeding* was the total amount bid at sale. It is a fundamental principle under ch. 846 that the amount due Harbor in this proceeding was only the amount resulting from entry of the only foreclosure judgment in this proceeding, namely the judgment resulting from Samp's default on the first mortgage. *See* Wis. Stat. 846.01(1) (court renders judgment of foreclosure and sale of the mortgaged property "as may be sufficient to pay the amount adjudged to be due upon the mortgage and obligation secured by the mortgage").

[11] Wisconsin Stat. § 846.165(2) provides:

In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs.

*See Bank of New York v. Mills,* 2004 WI App 60, ¶¶ 8–10, 270 Wis. 2d 790, 678 N.W.2d 332. Confirmation is "analogous to the execution of a judgment and simply enforce[s] the parties' rights which have been adjudicated." *Shuput,* 109 Wis. 2d at 173.

¶ 45. Second, although it was not required to do so, the court decided to accommodate Samp by holding the draft order until the end of the day before entering it. This was not an accommodation that the court was required to make, or perhaps even a routine accommodation. "Generally, when a hearing is held to confirm a foreclosure sale, confirmation of the sale is not stayed by stipulation or otherwise. Rather, the confirmation becomes effective immediately, and the order is entered at or following the hearing." *Gisvold,* 215 Wis. 2d at 483.[12] The fact that the court added hours to the months of grace already provided by the statutory right of redemption undercuts Samp's assertion that judicial confirmation was unjust.

¶ 46. We note that Samp's approach to redemption was quite perilous. He waited until the confirmation hearing to appear in the company of a person willing to lend to him funds sufficient to redeem, hoping that the court would give him time after the confirmation hearing to make a redemption payment. This approach risked not only that a trial court might exercise its broad discretionary authority at the confirmation hearing to

[12] The circuit court in this case went so far as to tell Samp, in the course of addressing his motion for reconsideration, that it "probably exceeded my authority in saying to you, 'you better pay that money by the end of the day.' " We do not adopt that position, but cite the observation because it highlights the competing obligations that circuit courts must balance in treating fairly all parties to a foreclosure action under the applicable statutes.

inquire only whether the bid price was adequate, and promptly enter the order confirming sale. This approach also risked that, even if the court decided to allow him the opportunity of minutes, hours, or even days to make a redemption payment, any impediment to delivery of payment, such as a technical or financial defect or irregularity, could be fatal to Samp's ownership interest.

¶ 47. Attorney Woodward's affidavit demonstrates only futile attempts at communication on Samp's behalf following the confirmation hearing and not actual payment, as required by the direction of the court and operation of law, before entry of the confirmation order. Woodward averred that:

- Woodward represented a third party who "has agreed to loan sufficient funds" to allow "Samp to redeem his residence in this foreclosure action," and who appeared with Samp at the confirmation hearing "prepared to write a check to the court to redeem the property."

- Woodward was able to reach Harbor's attorney by phone at 3:30 p.m. following the hearing on the same day, and told the attorney "that arrangements had been made to loan to . . . Samp not only the amount necessary to fund the redemption of the mortgage that is the subject of this action, but also the entire bid of $410,997.88[,] which would satisfy a separate judgment and second mortgage" of Samp to Harbor.

- Woodward told Harbor's attorney that Woodward had

> drafted all of the loan documents to reference the redemption amount only and that I would have to revise all of the loan documents and obtain signatures based upon the full bid amount; as such, it would take until the next day [the day following entry of the confirmation order] to accomplish this.

239

Harbor's attorney responded that Woodward "should contact his client directly to advise him" about the situation.

- Woodward left a voicemail for the president of Harbor, but received no response, and then sent an email to the president, a copy of which Woodward attached to his affidavit showing a transmittal time of 5:57 p.m. on January 27, 2010.

¶ 48. One may compare Samp's approach to that of the parties in *Gisvold*, where the mortgagors and the mortgagee negotiated a stipulation, which was amended and extended over time, requesting the court to stay entry of confirmation order to allow the mortgagors additional time to redeem the property, Samp appeared at the hearing with only one option, at best: immediate payment to redeem. *See Gisvold*, 215 Wis. 2d at 466–67.

¶ 49. Samp's perilous approach was apparently premised in part on the mistaken view that a mortgagor may redeem by handing a check to a judge, facilitating last-second redemption. Samp submitted Woodward's post-confirmation affidavit averring that Samp was "prepared to write a check to the court to redeem the property," and similarly now asserts on appeal that he was "prepared to write a check to the court for the sum due." The following is not a trivial point in the context of the argument Samp now makes: a mortgagor is obligated, under the comprehensive scheme set forth in WIS. STAT. ch. 846, to plan at least sufficiently enough to conduct this transaction before entry of the confirmation order at the clerk of court's office, at a time when that office is open to accept payment, or by getting the money directly to the plaintiff-mortgagee. *See* § 846.13 ("by paying to the clerk of the court in which the judgment was rendered, or to the plaintiff").

¶ 50. While redemption is remedial in nature, even liberal construction will not save a mortgagor who has "ample opportunity" to redeem "within the time provided" and fails to do so. *See Gisvold*, 215 Wis. 2d at 476. We recognized in *M & I Marshall & Ilsley Bank v. Kazim Inv., Inc.*, 2004 WI App 13, 269 Wis. 2d 479, 678 N.W.2d 322, the need for courts to confirm sheriff's sales if they are conducted in a manner consistent with ch. 846. Creditors and debtors alike benefit from the sales, and the incentive to bid is diminished if "bidders could not do so with confidence that their winning bids would be confirmed [according to applicable law]." *Id.*, ¶ 11 n.4.

¶ 51. This is not to suggest that the circuit court's approach in denying the motion to vacate the confirmation order was the only reasonable decision the court could have made. However, it is difficult to see how we could conclude that it was an erroneous exercise of the court's discretion to find that Samp himself, and not the court or Harbor, was largely responsible for the dilemma that Samp asserts he faced during the hours following the confirmation hearing. In addressing the motion to vacate, the court concluded that Samp could not "expect a third, fourth or fifth kick at the cat" in opportunities to make a redemption payment.

¶ 52. Samp makes two arguments for a finding that confirmation was unjust. First, he points to the fact that the court suggested during the confirmation hearing that if Samp was going to make a redemption payment, he should make payment to the attorney instead of the clerk of court. Samp contends this resulted in unfairness because Harbor's attorney was not sufficiently available and cooperative in discussions following the hearing on the same day as the hearing.

241

¶ 53. This is not a strong basis for vacating the order confirming sale as unjust. First, the court made clear at the confirmation hearing that payment to the clerk's office was possible, and in fact this was the focus for most of the hearing. The court simply observed toward the end of the discussion that court staff preferred payment directly to the attorney.[13] Samp did not protest this suggestion, or even question it. Second, Samp does not claim that he or a surrogate in fact presented payment to the attorney that was dodged, discarded, or ignored, even if Samp genuinely thought this was his only option to redeem. Instead, he left it to Woodward to *initiate* communications with Harbor to the effect that Samp would *not* be able to provide payment before the court signed the order at the close of the day on January 27, 2010. Third, while Samp appeared at the hearing without an attorney, he expressed no reservation, concern, or confusion at the hearing about payment to the attorney versus payment to the clerk.

¶ 54. As a second ground of unfairness, Samp points to the fact that the court repeated the position of Harbor at the confirmation hearing that Samp was required to pay the entire amount bid at auction, and not merely the amount of the judgment on the first mortgage, plus the incidental costs.

¶ 55. As with the first basis, we are not persuaded that this created unfairness that any reasonable judge

---

[13] The court explained at the hearing on the motion to vacate that the reason for this preference is to avoid unnecessary delay, in that a payment made to the clerk's office could not be forwarded to the plaintiff until the check cleared the clerk's office.

should recognize. By his own account, Samp appeared at the confirmation hearing prepared to make a payment for the amount due on the first judgment, plus accrued interest, costs, and taxes. Moreover, Samp confirmed in the affidavit he submitted in support of his motion to vacate that after he was advised at the hearing that $410,997.88 "would be the amount required to clear the title to the property, I was prepared to pay that amount." The assertion that he was prepared to pay the larger amount was among the admittedly contradictory ideas that Samp conveyed to the court at the time of the hearing. It was not unfair for the court to have taken Samp at his word on this point. The fact that Harbor described the amount necessary to redeem as the total amount bid, and that the court repeated that contention to Samp, did not prevent Samp from paying either the lesser or the greater amount, either to the clerk's office or to a representative of Harbor.

¶ 56. In addition, Samp apparently made no attempt to alert the court or court staff, following the confirmation hearing, that he was being in any sense prevented from making a payment of either the greater or the lesser amount to the clerk's office or to Harbor. Because the court had made clear that it would enter the order at the close of the business day, continuing communications between Samp or a surrogate and any representative of Harbor after the close of business were irrelevant to this issue, and should have been seen as irrelevant at the time. The legal standards and the unambiguous prediction of the court were both clear: Title would transfer upon entry of the confirmation order at the end of the day if a redemption payment was not made.

¶ 57. Although not immediately apparent, we believe that the analysis in the concurrence/dissent rests

on an unreasonable premise. That premise is that it would be an improper exercise of discretion for a circuit court to conduct and conclude a scheduled confirmation hearing if a mortgagor appeared at the hearing claiming the ability and desire to make a redemption payment. We respectfully disagree. No doubt a circuit court could, in many circumstances, reasonably exercise its discretion to adjourn a scheduled confirmation hearing for reasons that could include allowing a mortgagor additional time to make a promised redemption payment. However, we have difficulty seeing how it would be a misuse of its discretion for a court to decline such a request, and proceed to address the only issue relevant to a confirmation hearing properly noticed and scheduled on the court's calendar—whether the sale at public auction should be confirmed. The concurrence/dissent's contrary view would permit a mortgagor to appear and, effectively, prevent confirmation at a hearing convened solely for that purpose. A mortgagor who has the ability and desire to redeem must make payment before the commencement of a properly scheduled confirmation hearing in order to avoid the risk of losing the opportunity to redeem permitted under Wis. Stat. § 846.13.

**Failure to Pay Clerk Difference Between Amount Bid and Amount Due On First Mortgage Foreclosure Judgment**

¶ 58. Samp also contends that Harbor failed to satisfy the requirement that Harbor was required to pay to the clerk, within ten days of the sale, the balance of the purchase price that Harbor had not already deposited with the sheriff at the time of sale, and that

this violated the requirements of Wis. Stat. §§ 846.16[14] and 846.17.[15] Put more specifically, Samp argues that as purchaser, Harbor was required to deliver to the clerk funds representing the difference between Harbor's

[14] As relevant to this argument, Wis. Stat. § 846.16(1), (2) provide that within ten days after the sheriff's sale, the sheriff shall

> file with the clerk of the court a report of the sale, and shall also immediately after the sale first deduct any fee due under s. 77.22(1); then deposit that fee, a return under s. 77.22 and the deed with the clerk of the court for transmittal to the register of deeds; then deduct the costs and expenses of the sale, unless the court orders otherwise, and then deposit with the clerk of the court the proceeds of the sale ordered by the court. The sheriff may accept from the purchaser at such sale as a deposit or down payment upon the same not less than $100, in which case such amount shall be so deposited with the clerk of the court as above provided, and the balance of the sale price shall be paid to the clerk by the purchaser at such sale upon the confirmation thereof . . . .

> (2) If the judgment creditor is the purchaser the judgment creditor may give his or her receipt to the sheriff or referee for any sum not exceeding the judgment creditor's judgment and such receipt shall be deemed a down payment, but in every case the purchaser shall pay the cost of sale; and if the sum due the creditor is less than the purchase price, the creditor shall pay the difference at the time of sale.

[15] As relevant to this argument, Wis. Stat. § 846.17 provides that following the sale and confirmation of sale,

> the clerk of the court shall thereupon pay to the parties entitled thereto, . . . the proceeds of the sale, and shall deliver to the purchaser, . . . at the sale [the sheriff's] deed upon compliance by such purchaser with the terms of such sale, and the payment of any balance of the sale price to be paid [by the purchaser]. *In the event of the failure of such purchaser to pay any part of the purchase price remaining to be paid within 10 days after the confirmation of such sale, the amount so deposited shall be forfeited and paid to the parties who would be entitled to the proceeds of such sale as ordered by the court, and a resale shall be had of said premises . . . .*

(Emphasis added.)

successful bid of $410,997.88 and the amount that Harbor was owed on the first mortgage and costs ($288,523.56). Samp argues that in the absence of such a payment, a new sheriff's sale is required under § 846.17. Harbor does not claim to have made such a payment at any time, before or after the ten-day period ran.

¶ 59. Samp correctly cites the general rules that (1) forfeiture of the down payment and a new sale are mandatory if the purchaser does not comply with the ten-day payment requirement, and (2) a circuit court lacks equitable authority to excuse non-compliance because this would ignore the statutory mandate of WIS. STAT. § 846.17. *Gisvold*, 215 Wis. 2d at 479–81.

¶ 60. The circuit court ruled on this issue, in addressing the motion for reconsideration, that it would "not make sense" for Harbor to have been required to make this payment to the clerk, only for the clerk to write a check back to Harbor for the same amount because of the outstanding money judgment in that amount entered in the separate action. Therefore the court reasoned, there was no defect in the sale because the statutes could not require a meaningless payment.

¶ 61. Samp does not deny Harbor's assertion that if Harbor had made this payment, the clerk's office would have simply turned around and paid Harbor the same amount. However, Samp asserts that the circuit court erred in failing to order a new sale based on the strict requirements of the ten-day rule, and also contends that if this had occurred Samp would not have lost his property.

¶ 62. We conclude that the circuit court was correct in finding that Samp failed to explain how this

246

alleged procedural error in the foreclosure proceedings, if error, affected his substantial rights. The question is not whether Samp would benefit from a new sale if now ordered. The question is whether any error or defect in the proceedings affected Samp's substantial rights. *See* Wis. Stat. § 805.18(1); *see also Welp v. Gunther*, 48 Wis. 543, 549, 4 N.W. 647 (1880) (reversal in part because court unable to determine that irregularities in foreclosure judgment did not prejudice rights of mortgagor). Assuming without deciding that Harbor was obligated to pay the funds at issue to the clerk in order to complete transfer of title to Harbor, Samp would be in the same position today even if Harbor had made such a payment. The payment would have provided no protection to Samp as the defaulting mortgagor, and failure to make the payment in itself had no negative impact on the outcome of this foreclosure proceeding for Samp.

## CONCLUSION

¶ 63. For these reasons, we conclude that the circuit court did not err in denying Samp's motion to vacate the confirmation order, and affirm.

*By the Court.*—Orders affirmed.

¶ 64. VERGERONT, P.J. (*concurring in part; dissenting in part*). I would reverse and remand the circuit court's denial of Samp's motion to vacate the confirmation of the sale. In my view, the circuit court did not address an issue that is necessary to resolve in order to properly exercise its discretion.

¶ 65. The issue relates to Harbor's erroneous position that, in order to redeem his property, Samp had to pay not only the amount of the judgment in this action (plus interests and costs), but also the amount of

the judgment Harbor obtained in a separate action brought on Harbor's second mortgage. This position is erroneous because Wis. Stat. § 846.13 plainly provides that the mortgagor may redeem "by paying to the clerk of the court in which the judgment was rendered, or to the plaintiff, or any assignee thereof, *the amount of such judgment, interest thereon and costs. . . .*" (Emphasis added.) The judgment in this case was for $272,125.73, the amount due on the mortgage at issue in this action, plus $430 in disbursements and $2500 in attorney fees.

¶ 66. Contrary to the plain language of this statute, the notice and motion that Harbor sent to Samp's counsel for the confirmation of the sale stated that "the amount due on said judgment [of foreclosure]" included the balance on Harbor's second mortgage, $122,474.32 (and perhaps costs and interests associated with that mortgage). Thus, according to this notice, Harbor was due $410,997.88 on the judgment of foreclosure. However, this action did not seek a foreclosure on the second mortgage. True, the second mortgage was referred to in the complaint, but the complaint did not seek a foreclosure of that mortgage. Similarly, although the judgment referred to the second mortgage, it did not adjudicate any amount owed on that mortgage.

¶ 67. A mortgagor's right to redeem for the amount of the judgment, interest, and costs exists "at any time before the sale," Wis. Stat. § 846.13, and "sale" does not occur until confirmation of the sale. *Security State Bank v. Sechen*, 2005 WI App 253, ¶ 8, 288 Wis. 2d 168, 707 N.W.2d 576. Thus, at any time before the court confirmed the sale, Samp had the right to redeem his property for $272,125.73, plus interests and costs.

¶ 68. Samp appeared at the confirmation hearing without counsel. After the court described the filings regarding the sale and Harbor's attorney made preliminary comments, the following interchange took place:

MR. SAMP: I've – I've come today to clear the deed financially. I can – I can do that. I've had representation talk to doctor or doctor to Mr. Petitjean about that and with little to no response. So I can – I can get that done, and I would like to do that.

THE COURT: I'm confused, Mr. Samp. You want to do what?

MR. SAMP: I want to clear the deed, make it whole on my – on my half, the amount that I owe.

THE COURT: So you want to retain the property?

MR. SAMP: Retain the property, yes.

THE COURT: Mr. Petitjean, any comment on that?

MR. PETITJEAN: The bid, your Honor, was $410,997.88. If Mr. Samp pays that amount to the clerk, there is nothing I can – I mean, that's what he pays.

THE COURT: So you are prepared to deposit those funds with the clerk of court?

MR. SAMP: Yes. If that's – if that's what I have to do, that is correct. I didn't know – obviously, your Honor, I guess I didn't – if it is the 411, then that is that, but I thought they called out the first loan for I think it was like 275 or 286. I was trying to get that number from Mr. Petitjean and from the bank. I had a hard time finding that, what that number was. I don't know if Mr. Petitjean has any comment on that, but I have – I have yet to find out what that number is, and that's why I've come today to find out. If it is the 411 that – that I owe, then that – then that is what I will – that I'm prepared

249

to do, but they called out the first loan and it was for roughly around 275, but I couldn't get the exact number. I couldn't find out what that – what that number was.

MR. PETITJEAN: Judge, John Petitjean again. If you look at the notice of motion and motion to confirm the sheriff's sale, the amount of the bid and the amount of the total amount due at the time of sale are printed in large bold print and that was filed with the Court January 18, 2010, with a copy sent to Mr. Samp's attorney, Attorney Patrick Blaney of the Liebmann Conway firm.

MR. SAMP: He doesn't – I mean, Patrick Blaney doesn't represent me anymore, but, you know . . . .

THE COURT: Well, understand . . . the situation is . . . if an attorney has previously entered an appearance in this case on your behalf –

MR. SAMP: No. I understand.

THE COURT: – ethically, ethically Mr. Petitjean can't deal with you directly. He needs to deal through your attorney.

MR. SAMP: Yeah. I understand.

THE COURT: And it's obvious that all of the statutory requirements for the sale have been complied with, and as we have indicated today, if you can come up with $410,997.88, absolutely, you are going to need to deposit those funds with the clerk of court's office, and I'm sure Mr. Petitjean's client is going to be very happy . . . . But, you know, absent depositing that amount with the clerk of court's office, you know, this deed is going to be delivered to Attorney Petitjean and his client is going to have title to the property.

¶ 69. After the court orally confirmed the sale and signed the order, it indicated that Samp had until the

end of the day to pay $410,997.88 by dropping it off at the office of Harbor's attorney in Green Bay.

¶ 70. I agree with the majority that a mortgagor is not entitled to obtain additional time after a scheduled confirmation hearing within which to redeem the property. However, I do not agree that a court properly exercises its discretion by confirming a sale regardless of whether the mortgagor is able to pay the correct amount on that day. Samp indicated that he could pay and that he wanted to pay. In my view, these statements necessitated an inquiry by the court on whether he was prepared to pay the correct amount at that time. One can't tell from the transcript whether he was prepared to do so because the court apparently adopted Harbor's erroneous position on what Samp had to pay, and this error informed the course of the proceeding. I do not agree with the majority that Samp's professed willingness to pay the higher erroneous amount—after being told by the court that was the amount he had to pay—somehow cures the error.

¶ 71. Samp's motion to vacate the confirmation of the sale and his counsel's arguments to the court raised the issue of Harbor's erroneous view of what Samp had to pay to redeem and of the court's adoption of this view at the confirmation hearing. In order to properly exercise discretion in deciding the motion, the court had to decide whether Samp was prepared to pay at that time the correct amount to redeem the property. Because the court did not do so, I would reverse and remand for further proceedings.

¶ 72. Although I conclude that Harbor was not entitled to have Samp pay the second mortgage balance in order to redeem the property, I agree with the majority's conclusion that the money judgment on the second mortgage was not a deficiency. As for the issue of

251

Harbor's failure to comply with WIS. STAT. §§ 846.16 and 846.17, I agree with the majority that any error was harmless.

¶ 73. Accordingly, I respectfully concur in part and dissent in part.