REBECCA G. BRADLEY, J.
¶ 1. We must decide whether a condominium policy violates Wisconsin law. Abbey Springs Condominium Association, Inc. and Abbey Springs, Inc. (collectively, "Abbey Springs") have a Membership and Guest Policy that forbids both current and subsequent unit owners from utilizing recreational facilities until unpaid condominium as *75 sessments are paid in full. In other words, the policy forbids new owners of a particular unit from utilizing recreational facilities if there are outstanding assessments attributable to the unit. Following a foreclosure action and sheriffs sale of the property at issue to Walworth State Bank, the Bank paid the former owner's outstanding assessments under protest. Walworth State Bank then asserted that the Abbey Springs policy violates Wisconsin law because it impermissibly revives a lien on the condominium units that was eliminated by the foreclosure action. As an alternative argument, Walworth State Bank argues that the policy renders title to the units unmarketable. The Walworth County Circuit Court[1] agreed with Walworth State Bank and granted it summary judgment. The court of appeals reversed.[2] For the reasons that follow, we reverse the court of appeals.
| 2. We hold that Abbey Springs's Membership and Guest Policy effectively revived the lien against the property that the Order for Judgment on Foreclosure and Judgment (hereinafter Foreclosure Judgment) entered against Abbey Springs and the former unit owners had extinguished. Although Abbey Springs concedes that Walworth State Bank had no legal obligation to pay the former owners' unpaid assessments following foreclosure, the policy dictates that any unpaid assessments stay with the unit and transfer to the new owners rather than travel with the former unit's owner who actually incurred the debt.[3] The policy does so by preventing a new purchaser of *76 any unit, whose only connection to the unpaid assessments is through the unit itself, from accessing the recreational facilities if the prior owner failed to pay his or her assessments. As a result, the policy effectively allows Abbey Springs to assert a right against the property for the prior owner's unpaid assessments in violation of well-established foreclosure law. Furthermore, the policy violates the Foreclosure Judgment that eliminated "all right, title, interest, lien or equity of redemption" of Abbey Springs in and to the foreclosed units. Because we conclude that the condominium policy violates well-established foreclosure law and the Foreclosure Judgment entered in the underlying foreclosure action, we do not address Wal-worth State Bank's argument that the policy renders the unit's title unmarketable.
I. Background
A. Units 18 and 19 at Abbey Springs
¶ 3. Walworth State Bank held a first real estate mortgage on Units 18 and 19, a single family residence on two lots, in Abbey Springs Condominium No. 1. Unit owners in Abbey Springs Condominium No. 1 pay assessments that allow access to recreational facilities that include a Yacht Club, restaurants, fitness and golf facilities, and boat slips.[4] These recreational facilities *77 are not listed as common elements of units located in Abbey Springs Condominium No. 1.
¶ 4. Abbey Springs has a Membership and Guest Policy that suspends both current unit owners and subsequent owners from the recreational facilities if unpaid assessments attributed to the unit are 90 days past due. The policy, in pertinent part, provides:
If any regular monthly or special assessment against any Unit is delinquent for more than ninety (90) days past its due date, the owner or owners of that Unit, and any subsequent owners, shall automatically and without notice be suspended from any use or occupation of the Yacht Club, Clubhouse Grille, Pool Café, fitness facilities, golf facilities, and boat launching facilities, until such time as assessments are paid in full.
¶ 5. In addition, Abbey Springs has Bylaws that govern operation of the property. Article V, Section four, titled Waiver of Use, provides that "no unit owner may exempt himself from liability for his contribution towards the common expenses or recreational facilities expenses by waiver of the use or enjoyment of any of the common areas and facilities or the recreational facilities, or by abandonment of his unit."
B. Underlying Foreclosure Action
¶ 6. In 2012, Walworth State Bank initiated a foreclosure action against the owners of units 18 and 19, a single family residence. The Complaint named Abbey Springs as a defendant in that action due to its claim of unpaid assessments attributable to the prop *78 erty. In January 2013, the Walworth County Circuit Court entered a Foreclosure Judgment. It determined the total amount owed Walworth State Bank to be $855,511.41. The circuit court's order and judgment in the foreclosure action also provided that the current owners and Abbey Springs were "forever barred and foreclosed of all right, title, interest, lien or equity of redemption" in and to the property. The circuit court retained jurisdiction in the foreclosure action "until redemption, or confirmation of sale, whichever occurs first." Walworth State Bank later purchased the property in a sheriffs sale. On April 29, 2013, the circuit court confirmed the sheriffs sale of the property to Walworth State Bank.
¶ 7. Prior to the sheriffs sale, Abbey Springs sent a letter to Walworth State Bank to alert the Bank to a policy it had adopted "to forbid use of the recreational facilities to the owners or occupants of any unit upon which assessments or other amounts owed to the Association are delinquent, regardless of whether or not the Association's lien rights were eliminated by foreclosure." Abbey Springs suggested that Walworth State Bank include notification of this policy in its announcements of the sheriffs sale of the property. On February 5, 2013, Abbey Springs sent a follow up letter to Walworth State Bank with a copy of the Membership and Guest policy enclosed.
¶ 8. Walworth State Bank responded to Abbey Springs's letters on June 24, 2013 and asserted that the Membership and Guest Policy violated numerous laws and the order in the foreclosure action. On June 26, 2013, Abbey Springs countered that it "does not claim, and has never claimed, that Walworth State Bank or any grantee from Walworth State Bank is liable for past assessments due the Association."
*79 ¶ 9. Walworth State Bank arranged for the property to be sold to new buyers with a closing scheduled for July 12, 2013. However, on July 12, 2013, Abbey Springs's Executive Director issued a letter stating that the outstanding assessments would be satisfied if "the seller pays Abbey Springs $13,225.32." As a result, the new buyers refused to close on the property as scheduled. On the same day, July 12, 2013, Walworth State Bank sent Abbey Springs another letter accusing the condominium association of "thwarting" the sale and requiring Walworth State Bank to pay the outstanding assessments. Abbey Springs reasserted its position — the Bank was not required to pay the prior owner's outstanding assessments — in a July 16, 2013 letter. Ultimately and under protest, Walworth State Bank paid the prior owners' unpaid assessments in the amount of $13,225.32 to complete the sale of the property to the new owners.
C. Procedural History
¶ 10. Walworth State Bank filed suit against Abbey Springs and asked the circuit court to declare Abbey Springs's policy in violation of Wisconsin law and to order judgment in the amount of $13,225.32 for the assessments it paid under protest. The circuit court granted Walworth State Bank's summary judgment motion after considering cross-motions for summary judgment. It determined that Abbey Springs's policy violated Wisconsin law by holding new owners jointly and severally liable for the prior owners' unpaid assessments in violation of Wis. Stat. § 703.165(2) (2013-14)[5] and by affecting the quality and market *80 ability of the property's title in violation of Wis. Stat. § 703.10(6). It also granted Walworth State Bank a monetary judgment against Abbey Springs in the amount of $13,225.32.
¶ 11. The court of appeals reversed. Walworth State Bank v. Abbey Springs Condo. Ass'n, No. 2014AP940, unpublished slip op. (Wis. Ct. App. Mar. 26, 2015). It held that the policy was not contrary to any Wisconsin statute and that Walworth State Bank had "no obligation to pay the delinquent assessments." Id., ¶ 18. Specifically, it held that Wis. Stat. § 703.165(5)(b), which establishes lien priority for unpaid assessments, did not govern the issue of liability for the unpaid assessments. Id., ¶ 16. It further held that Wis. Stat. § 703.165(2), which governs liability for assessments, does not govern liability for unpaid assessments in an involuntary grant, such as the sheriffs sale that occurred here. Id., ¶ 18. It further reasoned that "[t]he policy merely created a pay-to-play requirement, and did not attempt to create joint and several liability in any respect."[6] Id.
II. Analysis
¶ 12. Appellate courts independently review orders for summary judgment utilizing the "same methodology as the circuit court." Yahnke v. Carson, 2007 WI 74, ¶ 10, 236 Wis. 2d 257, 613 N.W.2d 102. "Summary judgment is appropriate when 'the pleadings, *81 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Id. (quoting Wis. Stat. § 802.08(2) (1995-96)).
A. Inapplicability of Wis. Stat. § 703.165(2)
¶ 13. Walworth State Bank argues that Abbey Springs's Membership and Guest Policy violates Wis. Stat. § 703.165(2) by holding subsequent owners who obtain property in an involuntary sale jointly and severally liable for the unpaid assessments of past owners. It also asserts that the policy renders title to the units unmarketable in violation of Wis. Stat. § 703.10(6).[7]
¶ 14. Whether the Membership and Guest Policy is valid in light of the Foreclosure Judgment that eliminated "all right, title, interest, lien or equity of redemption" of Abbey Springs in and to the property, presents an issue of first impression that is not directly controlled by Wisconsin case law or the Wisconsin Statutes. Although Walworth State Bank argues that Wis. Stat. § 703.165(2) governs and that the policy is invalid under this statute, we do not agree.
*82 ¶ 15. Wisconsin Stat. § 703.165 is titled: "Lien for unpaid common expenses, unpaid damages, and unpaid penalties." Section 703.165(2) pertains to "liability for assessments" and states, in full:
A unit owner shall be liable for all assessments, or installments thereof, coming due while owning a unit, including any assessments coming due during the pendency of any claim by the unit owner against the association or during any period in which the unit is not occupied by the unit owner or is leased or rented to any other person. In a voluntary grant, the grantee shall he jointly and severally liable with the grantor for all unpaid assessments against the grantor for his or her share of the common expenses up to the time of the voluntary grant for which a statement of condominium lien is recorded, without prejudice to the rights of the grantee to recover from the grantor the amounts paid by the grantee for such assessments. Liability for assessments may not be avoided by waiver of the use or enjoyment of any common element or by abandonment of the unit for which the assessments are made.
Wis. Stat. § 703.165(2) (emphasis added). The statutory language emphasized above indicates that in a voluntary grant, a new owner is held jointly and severally liable for unpaid assessments owed by the prior owner. Walworth State Bank relies on this language to argue that the inverse must be true in an involuntary grant, such as a sheriffs sale. Specifically, Walworth State Bank's position is that in an involuntary grant, a new owner cannot be held jointly and severally liable for the outstanding assessments of the prior owner. However, we agree with the court of appeals that the language in § 703.165(2) pertaining to voluntary grants of property has no bearing on the involuntary grant at issue here. The liability of a new owner for the outstanding debt of the prior owner *83 under the circumstances of an involuntary grant is not directly addressed in Chapter 703 and it is not this court's place to speak where the legislature was silent.[8]
B. The Law of Foreclosure
¶ 16. Instead, we turn to pertinent statutory provisions governing condominiums, the Foreclosure Judgment entered against Abbey Springs in the underlying foreclosure action, and well-established foreclosure law to render a decision. Chapter 703 of the Wisconsin Statutes, known as the Condominium Ownership Act, governs condominiums. It explains that unpaid condominium assessments "constitute a lien on the units on which they are assessed" as long as certain statutory requirements are met. Wis. Stat. § 703.165(3). Assessments are defined as "regular and special assessments for common expenses and charges, fines, or assessments against specific units or unit owners for damages to the condominium or for penalties for violations of the declaration, bylaws, or association rules." Wis. Stat. § 703.165(1).
¶ 17. Wisconsin Stat. § 703.165(5) also governs the priority given to a lien for unpaid assessments. Applicable here is § 703.165(5)(b), which provides that *84 "a first mortgage recorded prior to the making of the assessment" has priority over a lien for unpaid condominium assessments.
¶ 18. Here, it is undisputed that the former owners of Units 18 and 19 had unpaid condominium association assessments. As Wis. Stat. § 703.165(3) indicates, these unpaid assessments constituted a lien against the units. It is also undisputed that Abbey Springs filed a claim for surplus in the foreclosure action "based on a 'Statement of Condominium Lien' " it filed against the former owners. Furthermore, the parties agree that Walworth State Bank's interest, as the holder of a first mortgage on the units, takes priority over Abbey Springs's lien based on unpaid assessments. This position is supported by the plain language of Wis. Stat. § 703.165(5)(b), which gives a first mortgage holder priority over any lien for unpaid assessments that was recorded after the first mortgage.
¶ 19. Prioritization of Walworth State Bank's first mortgage over Abbey Springs's lien for unpaid assessments is reflected in the Foreclosure Judgment entered by the circuit court in the foreclosure action. In that action, the circuit court entered default judgment against the unit owners and Abbey Springs. Specifically, the circuit court ordered that the defendants, including Abbey Springs, "after the filing of the Lis Pendens herein, be forever barred and foreclosed of all right, title, interest, lien or equity of redemption in and to said mortgaged premises . . . ." Abbey Springs did not appeal the circuit court's Foreclosure Judgment.
¶ 20. The circuit court's order in the foreclosure action that eliminated " all right, title, interest, lien or equity of redemption in and to" the property aligns *85 with Chapter 846 of the Wisconsin Statutes and the equitable purpose of foreclosure. In Wisconsin, and across much of the United States, judicial foreclosure is the available method of foreclosure. 1 Grant S. Nelson et al., Real Estate Finance Law § 7:12, at 903 (6th ed. 2014). Generally speaking, Chapter 846 of the Wisconsin Statutes sets forth a two-step procedure that governs the foreclosure process. Shuput v. Lauer, 109 Wis. 2d 164, 171, 325 N.W.2d 321 (1982). The first step includes the judgment of foreclosure and sale. Id. It is during this first step that a circuit court determines "the parties' legal rights in the underlying mortgage and obligation, including the right to a deficiency judgment." Bank Mut. v. S.J. Boyer Const., Inc., 2010 WI 74, ¶ 27, 326 Wis. 2d 521, 785 N.W.2d 462. Specifically, Wis. Stat. § 846.01 addresses the first step in the foreclosure process, the foreclosure judgment. Section 846.01(1) provides, in pertinent part:
[I]n actions for the foreclosure of mortgages upon real estate, if the plaintiff recover, the court shall render judgment of foreclosure and sale, as provided in this chapter, of the mortgaged premises or so much of the premises as may be sufficient to pay the amount adjudged to be due upon the mortgage and obligation secured by the mortgage, with costs.
Id. This court has determined that § 846.01(1) "requires the court to render judgment of foreclosure and sale in successful foreclosure actions." Bank Mut., 326 Wis. 2d 521, ¶ 28.
¶ 21. The second step in foreclosure actions "carries into effect and enforces the judgment of foreclosure and sale." Id., ¶ 27. That is, after the judgment of foreclosure is entered and sale of the property com *86 pleted, additional statutory proceedings take place to confirm the sale, determine the rights to surplus, if any, and enter deficiency judgment, if applicable. See Wis. Stats. §§ 846.162, 846.165, 846.167; see also Shuput, 109 Wis. 2d at 171.
¶ 22. In carrying out this two-step process, a circuit court ensures that the basic objectives of a foreclosure action are met. Secondary sources and Wisconsin case law have explained the objective and function of foreclosure actions in various ways:
The basic objective of an action to foreclose is to enable the mortgage creditor to get his debt paid out of the security. To accomplish this end[,I it is the purpose of the foreclosure sale to end the right to redeem of all persons who have interests in the property subject to the mortgage and to vest in the purchaser on the sale the title to the property as it stood at the time of the execution of the mortgage.
George E. Osborne, Handbook on the Law of Mortgages § 319, at 669 (2d ed. 1970). This court has explained that "the judgment of foreclosure and sale determines the rights of the parties and disposes of the entire matter in litigation . . . ." Shuput, 109 Wis. 2d at 172. Furthermore, the Restatement (Third) of Property addresses the effect of foreclosure actions on lien priorities: "A valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed and whose holders are properly joined or notified under applicable law." Restatement (Third) of Property (Mortgages) §7.1 (1997) (emphasis added). In regard to the first priority mortgage, this court has explained that, generally, "a proper foreclosure proceeding, when confirmed, satisfies the debt [if there are sufficient funds] and extinguishes the mortgage." Winter v. Knaak, 236 *87 Wis. 367, 370, 294 N.W. 488 (1940). With regard to the rights of junior lienholders such as Abbey Springs, the court of appeals has stated:
[W]hen property is sold at a foreclosure sale, the property is transferred to the purchaser who receives the interest of the mortgagor and whatever interest the other parties to the suit possessed at the commencement of the action. As a result, those who were parties to the action can no longer assert any claim or right of interest against the property. The interest of such parties is deemed "foreclosed," leaving them to look only to sale proceeds for satisfaction of their claim.
First Wis. Trust Co. v. Rosen, 143 Wis. 2d 468, 472-73, 422 N.W.2d 128 (Ct. App. 1988) (citations omitted). In sum, secondary sources and Wisconsin case law demonstrate that foreclosure actions are designed to: (1) bring together creditors' claims to a property for disposition in a single proceeding; (2) apply proceeds from the foreclosure sale to satisfy the liens of those parties to the foreclosure action in order of priority; and (3) extinguish unsatisfied junior lienholders' rights[9] to the property so that title transfers unencumbered to the new purchaser.
¶ 23. Abbey Springs attempts to evade the effect of the Foreclosure Judgment in this case by acknowledging that its lien was extinguished in the foreclosure action but claiming that the underlying debt — the unpaid assessments — survives due to its connection to Units 18 and 19. Indeed the underlying debt does survive and nothing in the Foreclosure Judgment prevents Abbey Springs from suing the former unit owners to recover that debt. What Abbey Springs is *88 foreclosed from doing is perpetually saddling the property and all subsequent owners with debt owed by the former unit owners unless and until that debt is paid. Not only did the Foreclosure Judgment extinguish the "lien" it also "forever barred and foreclosed" all "right" and all "interest" of Abbey Springs in and to the property. The circuit court possessed both statutory and equitable power to effectuate this comprehensive foreclosure of rights and interests.
¶ 24. In carrying out the two-step foreclosure procedure, circuit courts are not limited to the powers and duties expressly provided in Chapter 846. "Foreclosure proceedings are equitable in nature, and the circuit court has the equitable authority to exercise discretion throughout the proceedings." GMAC Mortg. Corp. v. Gisvold, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998). In other words, the foreclosure judgment, in accordance with Wis. Stat. § 846.01 as well as the equitable authority of the circuit court, determines the rights of the parties with interests in the foreclosed property.
¶ 25. The purpose of foreclosure law and the statutory scheme governing foreclosure in Wisconsin guide our decision. As discussed, the purpose of foreclosure is to allow a mortgagee to collect what it is owed through, generally speaking, the sale of the mortgaged property. See Osborne, supra § 319, at 669. To achieve this purpose, a foreclosure action determines the rights of the parties to the subject property and restores "the title to the property as it stood at the time of the execution of the mortgage." Id. Here, but for Walworth State Bank's payment of the former owners' unpaid assessments, title would not have been so restored because the former owners' debt, which Abbey *89 Springs claims survives the foreclosure action, would continue to affect the current owners' ability to utilize the recreational facilities. Moreover, Chicago Title Company issued a commitment for title insurance to the then-prospective owners containing an exception from coverage for the unpaid assessments.
¶ 26. In accordance with Wis. Stat. § 846.01 and its equitable powers, the circuit court eliminated all rights of Abbey Springs and the former owners to the property in the foreclosure action. However, Abbey Springs's Membership and Guest Policy contravenes the circuit court's order in the foreclosure action by reviving an interest in the units that the circuit court eliminated. The policy does so because unpaid assessments attributable to the units remain attributable to the units even after foreclosure. This is contrary to both the judgment of foreclosure, which eliminated not only the lien but all of Abbey Springs's rights and interests in and to the property in question, and well-established foreclosure law. As a result, the condominium policy as applied in this case violates both the purpose of foreclosure and the circuit court's Foreclosure Judgment.
¶ 27. The fact that Walworth State Bank had no legal obligation to pay the former owners' outstanding assessments after foreclosure does not change our decision. The connection Walworth State Bank had to the outstanding assessments was through its ownership of the property after purchase at the sheriffs sale. Abbey Springs's policy improperly tethers the unpaid assessments to the unit itself by prohibiting subsequent owners from utilizing the recreational facilities. This is an assertion of a right against the property itself regardless of whether or not Abbey Springs would have been able to legally collect the unpaid *90 assessments from Walworth State Bank or a later owner. We agree with the dissent that "a lien cannot exist independent of a debt." Dissent, ¶ 56. However, here, as we have explained, Abbey Springs's policy ties the unpaid assessment debt — owed by the former owners of the units — to the units themselves, thereby impermissibly reviving an interest extinguished by the foreclosure action. The dissent disregards the fact that not only were liens extinguished by the Foreclosure Judgment but also "all right, title, interest, lien or equity of redemption" were also eliminated.
¶ 28. Additionally, contrary to the court of appeals' suggestion otherwise, Abbey Springs's policy cannot be characterized as a pay-to-play policy because it requires the new owners to continue to pay monthly assessments for the recreational facilities regardless of whether or not they use the facilities or are prohibited from using them. Under the Bylaws, new owners must continue to pay monthly assessments for the recreational facilities even if the Membership and Guest Policy prohibits them from setting foot in any of the recreational facilities due to the prior owners' unpaid assessments. If the Membership and Guest Policy prohibited only current owners from utilizing recreational facilities when those current owners failed to pay assessments, we might be able to characterize the policy as a pay-to-play policy. However, the Bylaws require owners to pay assessments for the recreational facilities while, at the same time, the Membership and Guest Policy prohibits owners from using the recreational facilities based on the unpaid assessments of prior owners. This is not a pay-to-play policy.
¶ 29. We recognize that condominium owners are often subject to a variety of enforceable use restrictions imposed under the declaration and bylaws pertaining *91 to their units. See, e.g., Wis. Stats. §§ 703.09(l)(g), 703.10(3). However, we disagree with the dissent's assertion that under our holding no use restriction imposed by a condominium or homeowners association could survive a foreclosure action. See dissent, ¶¶ 67-69. Our holding does not extend to enforceable use restrictions and is far more narrow than the dissent suggests. Abbey Springs's Membership and Guest Policy cannot survive a foreclosure action to the extent it restricts a current owner's use of certain recreational facilities based on the failure of the prior owners to pay their debts. Such a policy ties the debts of the prior owners to the units, in violation of well-established foreclosure law as reflected in the Foreclosure Judgment. A use restriction that prohibits dogs on condominium property, for example, would not depend on a prior owner's actions and would not result in a foreclosed debt forever haunting a particular unit instead of following the prior owners to whom the debt belongs. The same could be said about the use restriction on renting upheld by Apple Valley Gardens Ass'n, Inc. v. MacHutta, 2009 WI 28, ¶ 3, 316 Wis. 2d 85, 763 N.W.2d 126.[10] The dissent disregards the obvious fact that enforceable use restrictions generally apply to all *92 property owners equally and not just to those who have the misfortune of purchasing units from prior owners who left unpaid debts behind.
III. Conclusion
¶ 30. We hold that Abbey Springs's Membership and Guest Policy violates well-established foreclosure law and the Foreclosure Judgment entered against Abbey Springs. It does so by tethering unpaid condominium assessments to the units, which effectively results in Abbey Springs asserting a right against the property that the Foreclosure Judgment eliminated. Under the undisputed facts, Walworth State Bank is entitled to summary judgment as a matter of law. Accordingly, we reverse the court of appeals and remand to the circuit court to enter an order consistent with our opinion.
By the Court. — The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

 The Hdnorable Phillip A. Koss presiding.

 Walworth State Bank v. Abbey Springs Condo. Ass'n, No. 2014AP940, unpublished slip op. (Wis. Ct. App. Mar. 26, 2015).

 Presumably Abbey Springs could pursue a separate action against the former unit owners to recover the unpaid *76 assessments. Its Membership and Guest Policy nevertheless ties unpaid assessments to the unit itself, regardless of a change in unit ownership.

 As we understand it, the assessments cover membership costs and unit owners are required to pay additional costs for the actual use and enjoyment of at least some of the recreational facilities. For example, the Membership and Guest Policy indicates that members are provided "a member account *77 for which they can charge any club-related expense" and that unit owners are responsible for all charged amounts.

 All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 The court of appeals also held that Abbey Springs's policy did not render the units' title unmarketable because Walworth State Bank failed to produce any evidence that the policy prevented it from conveying title. Walworth State Bank v. Abbey Springs Condo. Ass'n, No. 2014AP940, unpublished slip op., ¶ 20 (Wis. Ct. App. Mar. 26, 2015).

 Because we conclude that Abbey Springs's Membership and Guest Policy violates well-established foreclosure law, we do not address Walworth State Bank's alternative argument that the policy renders title to the units unmarketable under Wis. Stat. §¡703.10(6). "Typically, an appellate court should decide cases on the narrowest possible grounds." Maryland, Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶ 48, 326 Wis. 2d 300, 786 N.W.2d 15.

 "The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it." Antonin Scalia & Bryan A. Gamer, Reading Law: The Interpretation of Legal Texts 93 (2012). "Courts must take statutes as they find them.... They are not the law-making body. They are not responsible for omissions in legislation." Id. (citing R.W.M. Dias, Jurisprudence 232 (4th ed. 1976)).

 Junior lienholders' rights are so extinguished when the junior lienholders are made parties to the foreclosure action.

 Comparing the policy at issue in this case with the rental restriction at issue in Apple Valley Gardens Ass'n, Inc. v. MacHutta, 2009 WI 28, 316 Wis. 2d 85, 763 N.W.2d 126, is not helpful considering that Apple Valley did not involve a foreclosed property or even a sale of a property. Id., ¶ 9. In Apple Valley we rejected the argument that a restriction on renting must appear in a condominium's declaration, rather than its bylaws, in order to be valid. Id., ¶¶ 1, 3. We also held that the specific condominium declaration at issue did not create a right to rent and that a restriction on renting did not render title unmarketable under Wis. Stat. § 703.10(6). Id., ¶ 3. Our holding that the rental restriction at issue in Apple Valley was *92 valid has no bearing on the application of the Membership and Guest Policy in the context of the foreclosed units.