**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 28, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2020AP2154**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CV3402

**IN COURT OF APPEALS
DISTRICT IV**

HEARTLAND CREDIT UNION,

    PLAINTIFF-APPELLANT,

  V.

CHOCOLATERIAN LLC AND LEANNE CORDISCO,

    DEFENDANTS,

DUANE BECKETT,

    DEFENDANT-RESPONDENT.

    APPEAL from an order of the circuit court for Dane County: JACOB B. FROST, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

    Before Blanchard, P.J., Kloppenburg, and Fitzpatrick, JJ.

¶1    FITZPATRICK, J. Heartland Credit Union brought a mortgage foreclosure action against Chocolaterian LLC in the Dane County Circuit Court. Heartland appeals an order of the circuit court which granted the motion of Duane Beckett, a junior lienholder, to confirm a sheriff's sale of real property belonging to Chocolaterian ("the property").

¶2    Chocolaterian borrowed money from Beckett, and a mortgage to secure that loan was recorded. Later, Chocolaterian executed a promissory note with Heartland ("Note 1"), and a mortgage to secure that debt was recorded. Beckett agreed to subordinate his mortgage to Heartland's mortgage for Note 1. A few months later, Chocolaterian executed a second promissory note with Heartland ("Note 2").

¶3    Chocolaterian failed to pay its debts to Heartland. Heartland filed a complaint against Chocolaterian requesting a foreclosure judgment. The complaint also requested a money judgment against Chocolaterian for the amounts due under Note 1 and Note 2. Beckett was named as a defendant in that action because of his status as a lienholder. The circuit court entered a judgment of foreclosure on Heartland's mortgage. The circuit court also entered judgment against Chocolaterian for the amounts due under Note 1 and Note 2.

¶4    At a sheriff's sale of the property, Heartland made a "credit bid" of $499,000,[1] an amount greater than the amount due to Heartland under Note 1, but

---

[1] When a judgment creditor such as Heartland bids on a property at a foreclosure sale, the judgment creditor may enter a credit bid rather than a cash payment. WIS. STAT. § 846.16(1g)(a)2. (2019-20) ("If the judgment creditor is the purchaser at a sale of mortgaged premises, the judgment creditor may give the judgment creditor's receipt to the sheriff or referee for any sum not exceeding the sum due to the judgment creditor."). A credit bidding lender does "not affirmatively pay any funds to acquire full title to and possession of the property" but, rather, pays for the property "in the sense that it [is] required to offset what the *debtors* owed it by the

(continued)

less than the amount due under Note 1 and Note 2 combined. Heartland moved to confirm the sale, but the circuit court concluded that Heartland was not entitled to credit bid more than the amount due under Note 1. The court allowed Heartland to withdraw its confirmation motion so that a second sheriff's sale could be held. Before a second sheriff's sale could be conducted, Beckett moved to confirm the sheriff's sale based on the credit bid made by Heartland at the prior sale. The circuit court granted Beckett's motion, but did not confirm the sale based on Heartland's credit bid of $499,000. Rather, at Beckett's request, the circuit court allowed Heartland to have a credit bid in the amount of $451,774.29 (the amount due to Heartland under Note 1) but required Heartland to pay Beckett $47,225.71 in satisfaction of his junior lien (the difference between Heartland's credit bid on Note 1 and the $499,000 credit bid of Heartland at the sale). Heartland appeals.

¶5      For the reasons that follow, we conclude that the circuit court correctly ruled that Heartland was not entitled to credit bid more than the amount due to Heartland under Note 1. However, we also conclude that the court erred in granting Beckett's confirmation motion regarding the sheriff's sale that was held because Beckett lacked statutory authority as a junior lienholder to move for confirmation of the sale based on Heartland's $499,000 credit bid. Our decision necessarily requires reversal of the circuit court's order that required Heartland to pay $47,225.71 to Beckett to satisfy Beckett's junior lien. We therefore remand for the circuit court to order a second sheriff's sale of the property.

---

fair value of the property." ***McFarland State Bank v. Sherry***, 2012 WI App 4, ¶5 & n.1, 338 Wis. 2d 462, 809 N.W.2d 58.

All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

**BACKGROUND**

¶6      Chocolaterian was a business located in Middleton, Wisconsin. Chocolaterian borrowed approximately $50,000 from Beckett to purchase real estate, and Beckett recorded a mortgage to secure that loan.  One year later, Chocolaterian executed a promissory note with Heartland for $416,000—Note 1— as well as a recorded mortgage to secure that debt.  On the same day that Chocolaterian and Heartland executed Note 1 and that mortgage, Heartland and Beckett entered into an agreement that subordinated Beckett's mortgage to Heartland's mortgage for Note 1 (the "subordination agreement").  Other terms of the subordination agreement will be discussed later in this opinion.  The following year, Heartland and Chocolaterian executed a second promissory note—Note 2— in the amount of $73,045.

¶7      After Chocolaterian fell behind in its payments owed to Heartland, Chocolaterian and Heartland entered into a forbearance agreement in which it was agreed that:  Heartland's mortgage constituted a first priority lien securing Chocolaterian's debts to Heartland; Chocolaterian would have limited additional time to voluntarily sell the property; and Chocolaterian would have a 30-day redemption period if Heartland initiated a mortgage foreclosure action against Chocolaterian.  Beckett was not a party to that forbearance agreement.

¶8    Chocolaterian defaulted on its debts to Heartland, and Heartland filed a complaint naming Chocolaterian and Beckett as defendants.[2]    The complaint sought, in pertinent part, a money judgment against Chocolaterian for the amounts due under Note 1 and Note 2, a foreclosure judgment requiring that Chocolaterian's property be sold at a sheriff's sale, and enforcement of the 30-day redemption period as agreed in the forbearance agreement.    Notably, and as is discussed later in this opinion, the complaint alleged that Note 1 is secured by Heartland's mortgage, but the complaint itself did not allege that Note 2 is secured by that mortgage.

¶9    Beckett answered the complaint and admitted that his mortgage was junior to Note 1.    However, Beckett also alleged in his answer that his mortgage had priority over Heartland's Note 2.

¶10    Heartland filed a summary judgment motion requesting a judgment of foreclosure of mortgage and a money judgment.    Heartland did not assert in its detailed motion that its mortgage secured Note 2 in addition to Note 1.    Beckett did not object to Heartland's summary judgment motion.

¶11    The circuit court granted Heartland's motion and entered a money judgment against Chocolaterian for the amounts due under Note 1 and Note 2—a total of $520,343.90 ($451,774.29 due under Note 1 and $68,569.61 due under Note 2).    The circuit court also entered a judgment of foreclosure on Heartland's

---

[2] The complaint also named Russell and Eunice Scott as defendants.  The Scotts held a mortgage on the property and entered into a subordination agreement with Heartland on the same day as Beckett.  Neither Chocolaterian nor the Scotts filed responsive pleadings in the circuit court, and default judgments were granted against each.  Neither the Scotts' mortgage nor their subordination agreement are relevant for purposes of this appeal.  Leanne Cordisco guaranteed payment of Notes 1 and 2, but no judgment was requested against Cordisco because she obtained a bankruptcy discharge.

mortgage. The court determined that Heartland's mortgage secures Chocolaterian's payment obligations under Note 1; the court did not state that Heartland's mortgage also secures Note 2 ("The Mortgage on the Property secures Chocolaterian's payment obligations under Note 1."). The judgment required that the property be sold at public auction under the direction of the Dane County Sheriff after expiration of the 30-day redemption period. The circuit court further directed that the proceeds of the sale "shall first be applied to the amounts due to [Heartland] under Note 1, and upon confirmation of sale, the Clerk shall pay out the proceeds of that sale to [Heartland] … up to the amount so adjudged due to [Heartland]."

¶12    Heartland was the only bidder at the sheriff's sale. The parties do not dispute that Heartland entered exclusively a credit bid for the property in the amount of $499,000. As noted, the amount of that credit bid was greater than the amount due to Heartland under Note 1, but less than the overall amount due to Heartland under Note 1 and Note 2.

¶13    Heartland filed a motion in the circuit court to confirm the sheriff's sale.[3] In that motion, Heartland asserted that the sale, if confirmed, would not result in a surplus for Beckett, reasoning that it was a credit bid, so "no actual money exchanged hands" from which a surplus could be drawn. Beckett did not object to confirmation of the sale. Instead, Beckett contended that a sale of the property based on Heartland's credit bid would result in a surplus payable to Beckett in the amount of approximately $47,000. More specifically, Beckett

---

[3] We note that the title of WIS. STAT. § 846.165 refers to a party's request to confirm a sheriff's sale as an "application" for confirmation, while the text of that section refers to that request as a "motion" for confirmation. For consistency, we refer to this request as a "motion."

6

argued that his mortgage was subordinated only to Note 1 and that Heartland's credit bid was an amount greater than that due under Note 1, so the sale resulted in a surplus equal to the difference between Heartland's credit bid and the amount due under Note 1.

¶14      At the hearing on Heartland's confirmation motion, the circuit court[4] concluded that Heartland had not been entitled to credit bid more than the amount due under Note 1.   The court allowed Heartland to withdraw its confirmation motion, stating:   "The unfortunate consequence of [Heartland's credit bid of $499,000] is that we then have to start over with another sale."   After the hearing, the circuit court issued a written order which stated:

> 1. The amounts owed to Heartland Credit Union pursuant to Note 1 are the only amounts secured by the Mortgage and the only amount that can be credit bid before having to then pay the lien held by Duane Beckett.
>
> 2. The amounts owed to Heartland on Note 2 are not secured by Heartland's Mortgage and do not take priority over the amounts secured by Mr. Beckett's lien.
>
> 3. As explained in the Judgment, the amounts owed on Note 1 are to be paid first from proceeds of sale of the mortgaged property, followed by the amounts owed to Mr. Beckett as secured by his mortgage.

¶15      Before a second sheriff's sale could be conducted, Beckett filed his own motion to confirm the first sale.  Beckett requested that the circuit court order an award of what Beckett contended were "surplus funds" within Heartland's credit bid beyond the amount due to Heartland under Note 1.   Heartland

---

[4] To this point in this opinion, "circuit court" referred to Judge Richard Niess.  From this point forward, the term "circuit court" refers to Judge Jacob Frost.

responded, in part, that Beckett had no authority as a junior lienholder to move for confirmation of the sale.

¶16    The circuit court granted Beckett's motion to confirm the sale and concluded that Beckett was authorized as a junior lienholder to move to confirm the sale. Further, the circuit court determined that Heartland must make a $47,225.71 payment to Beckett, an amount equal to the difference between its credit bid of $499,000 and the amount due under Note 1. Heartland appeals.

¶17    Other material facts will be mentioned in the following discussion.

## DISCUSSION

¶18    Heartland makes two principal arguments germane to our discussion. First, Heartland argues that the circuit court erred in concluding that Heartland was entitled to credit bid only the amount due under Note 1 rather than the total amount due under Note 1 and Note 2. Second, Heartland argues that the circuit court erred in determining that Beckett, as a junior lienholder, was authorized to move for confirmation of the sheriff's sale based on Heartland's credit bid.

¶19    For the reasons that follow, we conclude that the circuit court correctly determined that Heartland was entitled to credit bid at the sheriff's sale only the amount that it was due under Note 1. Further, we conclude that the circuit court erred in ruling that Beckett was statutorily authorized to move for confirmation of the sheriff's sale based on Heartland's credit bid.

¶20    We begin our analysis by setting forth our standards of review.

## I.  Standards of Review.

¶21    This case requires us to interpret Wisconsin's foreclosure statutes. Statutory interpretation, and the application of statutes to undisputed facts, are questions of law that we review de novo.  *Horizon Bank, Nat'l Ass'n v. Marshalls Point Retreat LLC*, 2018 WI 19, ¶28, 380 Wis. 2d 60, 908 N.W.2d 797.

¶22    This appeal also requires us to interpret the terms of contracts, including Heartland's mortgage, Note 2, and Beckett's subordination agreement. *See Mitchell Bank v. Schanke*, 2004 WI 13, ¶27, 268 Wis. 2d 571, 676 N.W.2d 849 ("[A] signed mortgage is an executed contract."); *Edwards v. Petrone*, 160 Wis. 2d 255, 258, 465 N.W.2d 847 (Ct. App. 1990) (a promissory note is a contract).  The interpretation of a contract is a question of law that we review independently of the circuit court's determination.  *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶21, 326 Wis. 2d 300, 786 N.W.2d 15.

## II.  Heartland Was Not Entitled to a Credit Bid of $499,000.

¶23    Heartland argues that the circuit court erred in determining that its $499,000 credit bid at the sheriff's sale was invalid, and Heartland contends that it was entitled to credit bid up to $520,343, the combined amount due under Note 1 and Note 2.  We begin our analysis by discussing a premise of each party's argument.

¶24    As one premise of its argument, Heartland contends that the circuit court incorrectly determined that Heartland's mortgage entered into with Chocolaterian did not secure Chocolaterian's payment obligations under Note 2. To repeat for context, in the circuit court's written order issued after the

confirmation hearing, the court stated that "[t]he amounts owed to Heartland Credit Union pursuant to Note 1 are the only amounts secured by the [Heartland] Mortgage" and "[t]he amounts owed to Heartland on Note 2 are not secured by Heartland's Mortgage." For the following reasons, we agree with Heartland that its mortgage secures Note 2.

¶25    Heartland acknowledges that the foreclosure judgment in this action does not expressly state that its mortgage secures Note 2. The foreclosure judgment's only express statement about Heartland's mortgage is that "The Mortgage on the Property secures Chocolaterian's payment obligations under Note 1." Nonetheless, in support of its position, Heartland points to language in its mortgage instrument which states that Heartland's mortgage secures "*all …* debts, obligations and liabilities arising out of credit previously granted, credit contemporaneously granted *and credit granted in the future*" to Chocolaterian. Heartland also points to language in Note 2 which states that "this Note is secured by all existing and future security agreements and mortgages between [Heartland] and [Chocolaterian]." And Beckett does not dispute in briefing in this court Heartland's assertions about the specific language of those agreements or the meaning of that language.

¶26    The circuit court's error in this regard may be understandable in that, while Heartland did not disclaim in this action that its mortgage secured Note 2, Heartland failed to explicitly state in both the complaint and the judgment that its mortgage secured Note 2. Nonetheless, our review of the applicable agreements is de novo, as noted earlier, and establishes that Heartland's mortgage secures Note 2.

¶27    We now discuss a premise of Beckett's argument. More particularly, Beckett contends that, based on the terms of the subordination agreement that he and Heartland entered into after Chocolaterian and Heartland signed Note 1, Beckett's mortgage is subordinated to only Heartland's mortgage on Note 1.

¶28    The priority of Beckett's mortgage behind only Note 1 is confirmed by the text of the subordination agreement. That agreement states that "the priorities granted [to Heartland] by this Agreement are limited to and shall not exceed the obligations checked below ("Obligations")." The particular "Obligations" are delineated in the agreement solely as "Note # 1." Further, there is a box on the subordination agreement that was not checked which would have included "[a]ll present and future credit extended by [Heartland] to [Chocolaterian]" as an "Obligation." By checking only the box next to "Note 1" as just described, Heartland agreed that only Note 1 was prioritized over Beckett's mortgage and the subordination agreement does not extend to future "Obligations" of Chocolaterian such as Note 2.

¶29    Further, the subordination agreement allows Heartland to be paid only up to the amount due under Note 1 before Beckett's mortgage is paid in full. The terms of the subordination agreement require that:

> all net proceeds arising from a foreclosure against the Property … shall, as between [Beckett] and [Heartland], be paid, distributed, or otherwise dealt with in the manner and to the extent required by the terms and conditions of [Heartland's] mortgage, notwithstanding terms and conditions to the contrary contained in [Beckett's] Mortgage, *until the Obligations are paid in full* or [Heartland's] Mortgage is satisfied.

(Emphasis added.) To repeat, "Obligations" is defined in the subordination agreement as the boxes checked in that agreement. As explained above, the only box that was checked concerned Note 1. Therefore, the sale proceeds would cover Heartland's mortgage only up to the amount due under Note 1 before Beckett's mortgage is paid in full.

¶30 In light of our conclusions that Note 2 was secured by Heartland's mortgage on the property and Beckett's mortgage was subordinated only to Heartland's mortgage for Note 1, we consider Heartland's arguments about the validity of its $499,000 credit bid.

¶31 First, Heartland contends that its credit bid was valid under WIS. STAT. § 846.16. This statute provides, in pertinent part:

> If the judgment creditor is the purchaser at a sale of mortgaged premises, the judgment creditor may give the judgment creditor's receipt to the sheriff or referee for any sum not exceeding the sum due to the judgment creditor.

Sec. 846.16(1g)(a)2. Heartland contends that the phrase "the sum due to the judgment creditor" in this statute refers to $520,343, the full sum awarded to Heartland in the foreclosure judgment—including the total amounts due under Note 1 and Note 2. However, Heartland's reliance on § 846.16 fails because the statute cannot be interpreted in these circumstances as framed by Heartland.

¶32 Contrary to Heartland's argument, the validity of Heartland's credit bid does not depend solely on the fact that its bid was less than the combined amounts due to Heartland from Chocolaterian under Notes 1 and 2. Rather, the validity of the credit bid made by Heartland must also be determined in light of the relative priority of the mortgages that secure Note 1, Beckett's note from Chocolaterian, and Note 2. *See **Walworth State Bank v. Abbey Springs Condo.***

*Ass'n, Inc.*, 2016 WI 30, ¶22, 368 Wis. 2d 72, 878 N.W.2d 170 (stating that "foreclosure actions are designed to … apply proceeds from the foreclosure sale to satisfy the liens of [the] parties to the foreclosure action in order of priority.").

¶33     Our interpretation of Wisconsin's foreclosure statutes must be based on "the context of [WIS. STAT.] ch. 846 as a whole" because that chapter sets forth a "comprehensive scheme of foreclosure." *Harbor Credit Union v. Samp*, 2011 WI App 40, ¶23, 332 Wis. 2d 214, 796 N.W.2d 813.  We reject Heartland's argument regarding the interpretation and application of WIS. STAT. § 846.16 in this situation because it would both negate the terms of the subordination agreement as just described and ignore the requirement of Wisconsin law that proceeds from a foreclosure sale must satisfy liens in order of the priority of the liens. *See Walworth State Bank*, 368 Wis. 2d 72, ¶22.  In other words, to interpret and apply § 846.16 in the manner advanced by Heartland would require that: (1) the validity of Heartland's credit bid of $499,000 depends solely on the fact that the bid was less than the amount of Heartland's total judgment of about $520,343; and (2) regardless of the terms of the subordination agreement, Beckett would lose the priority of his mortgage over Heartland's mortgage securing Note 2.  Neither proposition is tenable, and Heartland's argument would lead to an absurd result.  We cannot interpret and apply a statute in that manner.  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory language is interpreted … reasonably, to avoid absurd or unreasonable results.").

¶34     Second, Heartland relies on provisions of the foreclosure judgment to support its argument regarding the validity of its credit bid.  We reject each of those contentions.

13

¶35 Heartland first asserts that the following language in the judgment is dispositive:

> [T]he proceeds of the sale of the Property shall first be applied to the amounts due to [Heartland] under Note 1, and upon confirmation of sale, the Clerk shall pay out the proceeds of that sale … up to the amount so adjudged due to [Heartland] (including interest through the date of this Judgment, and fees, costs and disbursements billed and/or incurred subsequent to the dates stated above, added to the amount of this Judgment).

Heartland contends that the foreclosure judgment's phrase "the amount so adjudged due to Plaintiff" refers to the combined amounts due under Note 1 and Note 2. As with other written instruments, we interpret a court's order de novo. *Walt v. City of Brookfield*, 2015 WI App 3, ¶19, 359 Wis. 2d 541, 859 N.W.2d 115. "[W]e begin with the plain language of the [order]" and "[w]e only turn to extrinsic evidence when the plain terms ... are ambiguous." *Id.* (quoting *BV/B1, LLC v. InvestorsBank*, 2010 WI App 152, ¶25, 330 Wis. 2d 462, 792 N.W.2d 622).

¶36 We reject Heartland's reading of this provision of the foreclosure judgment. Rather, that language of the judgment directs that "the proceeds of the sale of the Property shall first be applied to the amounts due to [Heartland] under Note 1." When the foreclosure judgment later states that the proceeds of the sale must be paid up to the "amount so adjudged due to [Heartland]," it is reasonably read as referencing "the amounts due to [Heartland] under Note 1" from earlier in that sentence. As a result, under the terms of the foreclosure judgment, the proceeds of the sale must be applied to Note 1 before any other lien, and the clerk must pay out the proceeds of the sale to Heartland up to the amount due under Note 1. After that, any remaining proceeds must be applied to the other liens on the property in order of priority, starting with Beckett's second priority lien.

¶37     Heartland also argues that the meaning of the foreclosure judgment's phrase "the amount so adjudged due to [Heartland]" is informed by parenthetical language following that phrase.  Repeating, this language states:

> [T]he Clerk shall pay out the proceeds of that sale to [Heartland] … up to the amount so adjudged due to [Heartland] *(including interest through the date of this Judgment, and fees, costs and disbursements billed and/or incurred subsequent to the dates stated above, added to the amount of this Judgment).*

(Emphasis added.)   More particularly, Heartland contends that the phrase "the amount of this Judgment" is equivalent to the total amount due under Note 1 and Note 2 and operates as the "baseline" amount for the purposes of the main sentence text in the judgment.

¶38     Heartland's interpretation of the parenthetical language is incorrect. As explained earlier, the main text of this provision in the judgment states that, when a sale is confirmed, Heartland is to be paid the proceeds of that sale up to the amount due under Note 1.  Although Heartland is owed money under Note 1 and Note 2, this paragraph recognizes correctly that only Note 1 has priority over Beckett's mortgage.  The parenthetical language on which Heartland relies does not alter the meaning of the main sentence.  The phrase "the amount of this Judgment" as used in the parenthetical is equivalent to the phrase "the amount so adjudged due to Plaintiff" as used in the main sentence.   Therefore, the parenthetical provides only that, when Heartland is paid the amount due under Note 1, Heartland is also to be paid the interest, fees, costs, and disbursements associated with that amount which are subsequently incurred.

¶39     Finally regarding the judgment, Heartland asserts that the foreclosure judgment's provision regarding Chocolaterian's right to redeem the

15

property demonstrates that the "amount so adjudged due to [Heartland]" refers to the total amounts due under Note 1 and Note 2. Under this provision, Chocolaterian is allowed to redeem its property during the redemption period by paying "all amounts due and owing to [Heartland]." Heartland argues that it would make "no sense" to require Chocolaterian to pay the amounts due under Note 1 and Note 2 during the redemption period if the proceeds from the foreclosure sale could satisfy only the amount due under Note 1.

¶40 Heartland's argument fails because the amount that a mortgagor must pay to redeem the property does not necessarily equal the amount to which the mortgagee is entitled to be paid out of the proceeds of a foreclosure sale. During a redemption period, the mortgagor "may redeem the mortgaged premises at any time before the sale by paying to the clerk of the court in which the judgment was rendered, or to the plaintiff, or any assignee thereof, the amount of such judgment." WIS. STAT. § 846.13. In this case, in order to redeem the property, Chocolaterian would have been required to pay all of Heartland's mortgage debts, including those due on Note 1 and Note 2, because Heartland was the party that requested foreclosure of the mortgage. However, after confirmation of a foreclosure sale, any cash proceeds of that sale are distributed according to priority of the liens. Here, although Note 1 and Note 2 are both secured by Heartland's mortgage, those notes are not of equal priority in relation to Beckett's note and mortgage. That Chocolaterian would be required to pay both Note 1 and Note 2 during the redemption period does not change the fact that Beckett's mortgage is behind only Note 1 in priority.

¶41 In sum, we reverse the circuit court order which stated that Heartland's mortgage with Chocolaterian did not secure Note 2 and conclude that Heartland's mortgage does secure that note. We affirm the circuit court's order

that Heartland's credit bid in the amount of $499,000, an amount greater than the amount due under Note 1, was invalid.

### III.  Beckett Did Not Have Statutory Authority to Move for Confirmation of the Sale.

¶42    Heartland next argues that Beckett did not have the statutory authority to move for confirmation of the sheriff's sale.[5]  We repeat for context that the circuit court initially ordered a second sheriff's sale after allowing Heartland to withdraw its motion to confirm the sale.  The court then reversed course and granted Beckett's motion to confirm the sale based on the $499,000 credit bid from Heartland and ordered Heartland to pay over $47,000 to Beckett, resulting in satisfaction of Beckett's note and mortgage.

¶43    As already noted, our interpretation of Wisconsin's foreclosure statutes must be based on the context of WIS. STAT. ch. 846 as a whole because that chapter sets forth a comprehensive scheme of foreclosure.  *Harbor Credit Union*, 332 Wis. 2d 214, ¶23.  For the reasons that follow, we conclude that Beckett's arguments fail to establish that, within these factual circumstances and the comprehensive scheme of ch. 846, Beckett as a junior lienholder had statutory authority to request confirmation of the sheriff's sale.

¶44    We begin our discussion by considering express statutory authority granted to Beckett as a junior lienholder.

---

[5] The parties refer to Beckett's basis to move for confirmation of the sale as "standing." However, in the context of the foreclosure statutes, this concept is more appropriately understood as "statutory authority."  *See JP Morgan Chase Bank, NA v. Green*, 2008 WI App 78, ¶21, 311 Wis. 2d 715, 753 N.W.2d 536 (discussing a purchaser's basis to move for confirmation of a foreclosure sale in terms of "statutory authority" rather than "standing").

## A. Chapter 846 Does Not Expressly Confer Authority on Beckett as a Junior Lienholder to Move for Confirmation of the Sale.

¶45    Heartland argues, and we agree, that Wisconsin's foreclosure statutes confer express authority to junior lienholders only to act in limited circumstances through two statutes. First, under WIS. STAT. § 846.15, a junior lienholder has the option to acquire the plaintiff's rights. This statute provides in pertinent part:

> Any person having a junior lien upon the mortgaged premises ... may, at any time before such sale, pay to the clerk of court, or the plaintiff or the plaintiff's assignee, the amount of such judgment, taxes, interest and costs, and costs subsequent to judgment, and shall thereupon be subrogated to all the rights of the plaintiff as to such judgment.

Sec. 846.15. In the event that a junior lienholder becomes subrogated to the rights of the plaintiff, then the junior lienholder obtains the plaintiff's right to enforce the foreclosure judgment and the authority to move for confirmation of the sale. *See JP Morgan Chase Bank, NA v. Green*, 2008 WI App 78, ¶17, 311 Wis. 2d 715, 753 N.W.2d 536 (stating that § 846.15 allows a junior lienholder to acquire the rights that plaintiff acquired as a result of the judgment, including "to have a sale of the property, to recover from the proceeds the amount determined due the plaintiff in the judgment, and, if the judgment so provides, to recover a deficiency judgment from the mortgagor if the sale proceeds are insufficient"). However, Beckett does not assert that he was subrogated to Heartland's rights as plaintiff. Therefore, Beckett did not have authority to move for confirmation of the sale under § 846.15.

¶46    Second, under WIS. STAT. § 846.162, a junior lienholder may file a claim for surplus if any surplus is paid into court. This statute states:

> *If there shall be any surplus paid into court by the sheriff* or referee, any party to the action or any person not a party who had a lien on the mortgaged premises at the time of sale, may file with the clerk of court into which the surplus was paid, a notice stating that the party or person is entitled to such surplus money or some part thereof, together with the nature and extent of the party's or person's claim. The court shall determine the rights of all persons in such surplus fund by reference or by testimony taken in open court, but no such hearing shall be had in court or before a referee except upon 8 days' notice to all persons.

Sec. 846.162 (emphasis added). This court has interpreted § 846.162 as "a procedural statute, creating a mechanism for parties to the action and nonparty lienholders to file a claim for surplus." *First Wis. Tr. Co. v. Rosen*, 143 Wis. 2d 468, 472, 422 N.W.2d 128 (Ct. App. 1988). "Nothing in sec. 846.162 can be viewed as substantive, creating or affirming any rights or priorities in the surplus." *Id.*

¶47    Heartland argues that Beckett had no authority under WIS. STAT. § 846.162 to file a claim for surplus because no cash surplus could be paid into court by the sheriff due to the fact that Heartland made exclusively a credit bid and, accordingly, Beckett had no authority to move for confirmation of the sale. Beckett does not meaningfully respond to Heartland's argument.

¶48    Moreover, WIS. STAT. § 846.162 does not confer authority on a junior lienholder to move for confirmation of a sale. At most, § 846.162 authorizes a junior lienholder to file a claim for surplus in the event that a surplus is paid into court. *See id.* ("Nothing in sec. 846.162 can be viewed as substantive, creating or affirming any rights or priorities in the surplus."). Therefore, Beckett did not have authority under § 846.162 to move for confirmation of the sale.

¶49    In sum, Wisconsin's foreclosure statutes do not expressly authorize a junior lienholder such as Beckett to move for confirmation of the sale.

## B.  Beckett Did Not Have Authority to Move for Confirmation of the Sale Under the Analysis in *JP Morgan*.

¶50    WISCONSIN STAT. § 846.165 concerns confirmation of a sheriff's sale in a foreclosure action, and we consider that statute within the context of the parties' discussion of *JP Morgan*.[6]  Beckett acknowledges that *JP Morgan* is not on point, but contends that it "seemed to open the door" to allow Beckett to move to confirm a sale.

¶51    We now summarize the facts and pertinent analysis in *JP Morgan*. In that case, the "purchaser" made the winning bid for foreclosed real estate at a sheriff's sale, and the bank that was then the mortgage holder moved to confirm the sale.  *JP Morgan*, 311 Wis. 2d 715, ¶7.  Prior to confirmation, the bank assigned its rights under the foreclosure judgment to another bank, JP Morgan, and

---

[6] WISCONSIN STAT. § 846.165 provides:

> **Application for confirmation of sale and for deficiency judgment.**  No sale on a judgment of mortgage foreclosure shall be confirmed unless 5 days' notice has been given to all parties that have appeared in the action.  Such notice shall be given either personally or by registered mail directed to the last-known post-office address, mailed at least 5 days prior to the date when the motion for confirmation is to be heard, if any post-office address is known; if not known, mailing may be dispensed with but an affidavit shall be filed with the court stating that the address is not known, and the notice shall state, in addition to other matter required by law, the amount of the judgment, the amount realized upon the sale, the amount for which personal judgment will be sought against the several parties naming them, and the time and place of hearing.

JP Morgan then withdrew the motion to confirm the sale. *Id.*, ¶¶6-7. In response, the purchaser moved to confirm the sale. *Id.*, ¶9. The circuit court granted that motion and the purchaser's prior motion to intervene in the action. *Id.* On appeal, JP Morgan argued that the purchaser had no statutory authority to move for confirmation of a sale. *Id.*, ¶21.

¶52 The court began its analysis by observing that WIS. STAT. § 846.165 "does not specify who may" file a motion for confirmation of a sale, and that silence made the statute "ambiguous" on this point. *Id.*, ¶25. Because § 846.165 is ambiguous regarding who may move for confirmation of a sale, the court continued its analysis by considering the purchaser's relation to the confirmation proceedings. *Id.*, ¶27. The court determined that the purchaser had the statutory authority to move to confirm the sale because the purchaser had an interest in the "opportunity for the court to decide whether the purchaser is entitled to transfer of the property according to applicable law." *Id.*, ¶¶27-28 (citing *GMAC Mortg. Corp. v. Gisvold*, 215 Wis. 2d 459, 482-83, 572 N.W.2d 466 (1998)).

¶53 We now consider Beckett's interest in the confirmation proceedings as a junior lienholder and whether that interest is sufficient to allow Beckett to file a motion to confirm the sale. *See id.*, ¶27 (examining the party's relation to the confirmation proceedings).

¶54 First, we reject Beckett's argument that his status as a party to this action is a sufficient interest. Beckett makes no developed argument to support that contention and asserts only that counsel does not "know of a good reason to think that [Beckett] was left out." We will not develop this argument for Beckett. *State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) ("We cannot serve as both advocate and judge.").

¶55　Moreover, two examples in WIS. STAT. ch. 846 help establish the point.  "[A]ny party" may "become a purchaser" under § 846.10(2)(a) and "any party" may petition the court for an order compelling the sale of the mortgaged premises if within twelve months after the date when judgment is entered the plaintiff has not completed certain actions under § 846.102(3)(b).  If, as Beckett apparently argues, any party to a foreclosure action is authorized to take any action or file any request for relief, then statutory designations of authority to "any party" would not be necessary in the two statutes just mentioned.  While not dispositive, this statutory language leads to the conclusion that, within the comprehensive scheme of ch. 846, Beckett's status as a party to this foreclosure action does not grant to him the legal authority to file any motion for relief, including a motion to confirm a sheriff's sale.

¶56　Second, regarding his relation to the confirmation of sale, Beckett argues only that he has "a monetary interest in the outcome" of the sale based on his "land record interest worth near $50,000."  But, Beckett has made no attempt to compare his economic interest in confirmation of this sale to the interests of the purchaser in *JP Morgan*.  Notably, as a basis for its reasoning in *JP Morgan* this court recognized the unique interest that a winning bidder has in confirmation of a sheriff's sale.  *See JP Morgan*, 311 Wis. 2d 715, ¶27.  This point has also been articulated by our supreme court:  "The purchaser at the sale is a party interested in the proceedings to confirm the sale."  *Shuput v. Lauer*, 109 Wis. 2d 164, 171, 325 N.W.2d 321 (1982).  Beckett gives us no basis to conclude that he has similar interests as a junior lienholder.

¶57　As his argument is stated, Beckett may be contending that *JP Morgan* stands for the proposition that Beckett has statutory authority to request confirmation of the sale because he has an interest in a potential result that would

cause Heartland to pay him approximately $47,000. We reject any such argument. *JP Morgan* cannot be reasonably interpreted to focus on the need for a particular result at a confirmation hearing. Instead, it focuses on the process available to the purchaser. More particularly, *JP Morgan* states that the purchaser has the right to a hearing for "the court to decide whether [the purchaser] is entitled to transfer of the property under applicable law." *JP Morgan*, 311 Wis. 2d 715, ¶28.

¶58    The principal point of the applicable analysis in *JP Morgan* is that the purchaser who bid on the property and won at the sheriff's sale could not be heard in court at all in the foreclosure process if he or she was not allowed to pursue a motion to confirm the sale. *JP Morgan* recognized that the purchaser had the authority to request a hearing and to be heard regarding its own bid. However, *JP Morgan* does not state that the purchaser had the right to a certain result at the hearing. Here, Beckett gives us no reason to conclude that his rights as a junior lienholder will not be fully considered and protected at a subsequent hearing on confirmation of a sale of the property. And we know that there will be such a sale and a later confirmation hearing because, as noted below, we remand for a second sale. Beckett will have the right to be heard and request relief based on the circumstances then present regarding the winning bid on the property and any interest Beckett may have.

¶59    In sum, Beckett's arguments do not establish that he had statutory authority to file a motion for confirmation of the sheriff's sale in these

circumstances. As a result, the circuit court's order that Beckett had such authority is reversed.[7]

¶60 The parties do not dispute that the circuit court allowed Heartland to withdraw its motion to confirm the sheriff's sale that already occurred. Further, Heartland argues on appeal that, pursuant to WIS. STAT. § 846.16(4)(c), under these factual circumstances and with Beckett having no authority to file a motion to confirm the sale, it is necessary to order a second sheriff's sale. Beckett does not argue otherwise on appeal. Therefore, we remand this matter to the circuit court with directions that the court order a second sheriff's sale and to conduct further proceedings consistent with this opinion.

## CONCLUSION

¶61 For the foregoing reasons, the order of the circuit court that Heartland's $499,000 credit bid is invalid is affirmed, the circuit court's order that Beckett had statutory authority to file a motion to confirm the sheriff's sale is reversed, and the cause is remanded with directions that the circuit court order a second sheriff's sale of the property and conduct further proceedings consistent with this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

Not recommended for publication in the official reports.

---

[7] In light of the resolution of this issue, we need not, and do not, reach the arguments of the parties regarding the order of the circuit court that requires Heartland to pay more than $47,000 to Beckett to satisfy Beckett's note and mortgage.